230 F.3d 525 (2nd Cir. 2000)
 DENNIS J. BOWEN, SR., Individually and as President of the Seneca Nation of Indians, Plaintiff Appellee,
v.
VINCENT E. DOYLE, JR., Justice, New York State Supreme Court, County of Erie, PENNY WOLFGANG, Justice, New York State Supreme Court, County of Erie, Defendants Appellants,
TYRONE LEROY, ROSEMARY PATTERSON, Intervenors Plaintiffs,
ROSS L. JOHN, SR., CHARLES L. BALLAGH, LINDA DOXTATOR, ROBERT KENJOCKETY, JR., RICHARD JIMESON, ARTHUR W. JOHN, RICKEY ARMSTRONG, SR., KAREN BUCKTOOTH, PAULINE REDEYE, MARSH BARNES THOMPSON, GERALDINE MEMMO, and MAXINE JIMERSON,
Movants.
 Docket No. 97-9572
No. 53--August Term: 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: April 28, 2000
Decided: October 18, 2000
 
 Two Justices of the New York State Supreme Court appeal from a grant of summary judgment in the United States District Court for the Western District of New York (Arcara, J.) enjoining them from entertaining jurisdiction over a state court action brought by officials of the Seneca Nation of Indians against the President of the Nation.
 Affirmed.
 DOUGLAS B.L. ENDRESON, Washington, D.C. (Anne D. Noto, Sonosky, Chambers, Sachse & Endreson, Washington, D.C., Michael A. Brady, Hagerty & Brady, Buffalo, N.Y., on the brief), for Plaintiff-Appellee.
 LEW A. MILLENBACH, Assistant Solicitor General, Buffalo, N.Y. (Eliot Spitzer, Attorney General, Peter H. Schiff, Deputy Solicitor General, Peter B. Sullivan, Assistant Attorney General, on the brief), for Defendants-Appellants.
 Before: JACOBS, LEVAL and SACK, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 This appeal arises out of a controversy over the governance of the Seneca Nation of Indians ("Seneca Nation" or "the Nation"), a federally-recognized Indian tribe with its own constitution. A suit over the membership of the Nation's Tribal Council was commenced before the Nation's Peacemakers Court. A suit arising out of the same governance crisis was thereafter commenced in the New York State Supreme Court, Erie County, which issued orders affecting the Nation's governance. Finally, suit was commenced in the United States District Court for the Western District of New York (Arcara, J.), seeking to enjoin the Justices of the state court from interfering with proceedings in the Peacemakers Court. The district court granted preliminary and final injunctive relief.
 
 
 2
 On this appeal, the Justices of the state court argue that the federal court improperly exercised jurisdiction before all state court remedies were exhausted. We disagree, and therefore affirm.
 
 BACKGROUND
 
 3
 The district court set forth in detail the facts relevant to this dispute in its preliminary injunction opinion, see Bowen v. Doyle, 880 F. Supp. 99 (W.D.N.Y. 1995), familiarity with which is assumed. We restate here only those facts relevant to the appellate arguments or otherwise needed for context.
 
 A. Tribal Court and State Court Actions
 
 4
 On November 11, 1994, Dennis J. Bowen, Sr., the newly elected President of the Seneca Nation, commenced an action in the Nation's Peacemakers Court against Ross John, Sr. seeking: (i) a declaration that Ross John, who had been appointed to the Nation's Tribal Council ("the Council") by the immediate past President, was not a duly appointed member of the Council; and (ii) an injunction prohibiting Ross John from acting or sitting as a member of the Council. The Peacemakers Court entered a temporary restraining order against Ross John.
 
 
 5
 Before any other relief could be granted, however, Ross John and twelve other enrolled members of the Nation sued Bowen in his individual capacity in New York State Supreme Court, Erie County on November 18, 1994.
 
 
 6
 The state court action was assigned to appellant New York State Supreme Court Justice Vincent E. Doyle. The complaint alleged that Bowen violated the law of the Seneca Nation in taking various actions relating to the conduct of the Nation's government. The plaintiffs sought: (i) a declaration that Bowen's actions were unlawful; and (ii) an order enjoining Bowen from taking certain actions relating to the affairs of the Nation. The complaint did not disclose the existence of the Peacemakers Court action.
 
 
 7
 On November 18, 1994, the day the state court complaint was filed, Justice Doyle issued an ex parte order enjoining Bowen from: 1) removing any of the state court plaintiffs from their seats on the Council; 2) appointing anyone to replace any of the state court plaintiffs on the Council; 3) removing other Seneca Nation employees; and 4) otherwise acting in a manner that impedes the meetings of the Council.
 
 
 8
 The state court plaintiffs then moved for a preliminary injunction. Bowen's opposition to the motion, filed November 26, 1994, informed the state court of the pending suit in the Peacemakers Court and asked that the complaint be dismissed for lack of jurisdiction.
 
 
 9
 While these motions were pending, two Councillors of the Seneca Nation, Tyrone LeRoy and Rosemary Patterson, received permission to intervene as plaintiffs in the Peacemakers Court action. They filed an amended Peacemakers Court complaint on November 29, 1994, adding four new defendants, of whom three were plaintiffs in the state court action. The amended complaint alleged that one of the new defendants, Arthur John, was unconstitutionally appointed to the Council and that the others were unlawfully holding themselves out as Nation officials even though their positions with the Nation had been terminated. The day the amended complaint was filed, the Peacemakers Court issued an order: (i) temporarily enjoining Arthur John from acting as a Councillor; and (ii) temporarily enjoining the three other defendants from acting in their respective government positions.
 
 
 10
 On December 9, 1994, Justice Doyle issued an order that had the effect of counteracting the order of the Peacemakers Court. The December 9 order: 1) directed that Ross John's appointment to the Council be allowed to stand, and that both Ross John and a Councillor appointed by Bowen be seated as Councillors until further order of the state court; 2) stayed all action ordered by the Council at any meeting on November 12, 1994; and 3) maintained in effect the state court's November 18, 1994 ex parte injunction. On December 12, 1994, Justice Doyle ordered that all meetings of the Council, until further order of the state court, be conducted subject to the terms and conditions of the December 9 order.
 
 
 11
 Justice Doyle denied Bowen's motion challenging the state court's jurisdiction on December 22, 1994, concluding that the state court had power to act pursuant to 25 U.S.C. § 233 and N.Y. Indian Law § 5. Justice Doyle further held that the state court action was not barred by either: (i) the prior pendency of the action in the Peacemakers Court, because the issues before the state court were not pending before the Peacemakers Court; or (ii) the doctrine of sovereign immunity, because the state court complaint alleged that Bowen was acting outside the scope of his tribal authority.
 
 
 12
 On December 30, 1994, Justice Doyle issued an order directing Bowen to show cause why he should not be held in contempt for willful violations of the state court's prior orders. Justice Doyle also ordered the sheriffs of Erie or Cattaraugus Counties to: 1) accompany Ross John and Arthur John to all Council meetings; 2) enforce the state court orders allowing Ross John and Arthur John to sit on the Council; 3) physically restrain Bowen from interfering with the state court decision to permit Ross John and Arthur John to sit on the Council; and 4) physically restrain Bowen from interfering with the state court order permitting other employees of the Nation to perform their duties and collect their salaries. Appellant New York State Supreme Court Justice Penny Wolfgang was assigned to hear the contempt application.
 
 
 13
 Bowen appealed the state court's orders to the state Appellate Division, Fourth Department. After the Appellate Division denied his application for a stay pending appeal, Bowen filed the present lawsuit in the United States District Court for the Western District of New York (Arcara, J.) on January 20, 1995.
 
 B. District Court Action
 
 14
 The district court complaint, brought pursuant to 42 U.S.C. § 1983, challenged the state court's jurisdiction in light of the pending Peacemakers Court action. The day the complaint was filed, Bowen moved for a temporary restraining order or preliminary injunction enjoining Justices Doyle and Wolfgang from exercising jurisdiction. The district court immediately held a hearing, at which the state court plaintiffs appeared and orally moved to intervene. The court granted the intervention motion, conducted a hearing on January 23, 1995, and issued a temporary restraining order on January 27, 1995 enjoining Justices Doyle and Wolfgang from exercising jurisdiction over the state court action.
 
 
 15
 On February 27, 1995, the district court issued a preliminary injunction enjoining Justices Doyle and Wolfgang and the courts of the State of New York from: 1) exercising further jurisdiction over the parties and subject matter of the state court action; 2) conducting any contempt proceedings against Bowen; and 3) enforcing any orders previously issued in the state court action. See Bowen v. Doyle, 880 F. Supp. 99, 138 (W.D.N.Y. 1995). The court found that Bowen was likely to succeed on the merits of his action because: 1) "under the Treaty of 1794 and well-settled case law, the Nation retains the right to self-government and exclusive jurisdiction over its internal affairs and the [appellants] therefore lack jurisdiction to adjudicate such a dispute"; 2) "the pendency of the Peacemakers Court action, which concerns the same dispute and was filed prior to the [s]tate [c]ourt action, renders the [s]tate [c]ourt without jurisdiction to proceed"; 3) "the [s]tate [c]ourt action is barred by the doctrine of sovereign immunity"; 4) "none of the abstention or procedural bars cited by the [appellants] and the [state court plaintiffs] apply to prevent this Court from granting an injunction"; and 5) "neither the [s]tate [c]ourt action nor this action is moot." Id. at 112. After the district court issued its injunction, the Court of Appeals for the Seneca Nation affirmed the orders issued by the Peacemakers Court.[1]
 
 
 16
 On October 27, 1997, the district court ruled on cross-motions for summary judgment, granting Bowen's motion for a permanent injunction and denying appellants' motion "for the reasons stated in the Court's February 27, 1995 Decision and Order."
 
 
 17
 This appeal followed.
 
 DISCUSSION
 
 18
 Appellants' sole argument on appeal is that the "District Court should have refrained from exercising its jurisdiction to enjoin the state court without letting the courts of New York State, including the State's appellate courts, first decide their own jurisdiction."
 
 Appellants invoke two principles:
 
 19
 A. Appellants rely on Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987) and National Farmers Union Insurance Cos. v. Crowe Tribe, 471 U.S. 845 (1985), which require the exhaustion of tribal court appeals before parties to tribal court proceedings may resort to federal court, and argue that the same principle of exhaustion should allow the state proceedings to run their course without interference by the federal courts.
 
 
 20
 B. Appellants rely on United States ex rel. Kennedy v. Tyler, 269 U.S. 13 (1925), which required the exhaustion of state court proceedings evolving out of conflicting state and tribal rulings before a federal court could consider a petition for a writ of habeas corpus regarding the same subject matter, and argue that the same principle of exhaustion should be applied outside the habeas context.
 
 A. LaPlante Exhaustion
 
 21
 The tribal exhaustion rule formulated by the Supreme Court in LaPlante, 480 U.S. at 15-19, and National Farmers, 471 U.S. at 856-57, bars federal courts from exercising jurisdiction over matters pending in tribal courts. Even when the jurisdiction of the tribal court is challenged, the "the Tribal Court itself" must be permitted to determine the issue "in the first instance."[2] National Farmers, 471 U.S. at 856. The exhaustion requirement is a "prudential rule" based on principles of comity; it is not a jurisdictional prerequisite. Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997); LaPlante, 480 U.S. at 16 n.8, 20 n.14. The proper scope of the LaPlante exhaustion rule is a question of law we review de novo. See Basil Cook Enters. v. St. Regis Mohawk Tribe, 117 F.3d 61, 65-66 (2d Cir. 1997) ("In the absence of one or more of [the three narrow exceptions to the LaPlante rule], exhaustion is required.") (emphasis added); Granberry v. Greer, 481 U.S. 129, 131 & n.4 (1987) (dicta) (characterizing the LaPlante exhaustion rule "as an inflexible bar to consideration of the merits . . . by the federal court, . . . requir[ing] . . . dismiss[al] when it appears that there has been a failure to exhaust") (emphasis added).
 
 
 22
 Appellants read LaPlante and National Farmers solely in terms of the restraint imposed on federal courts in adjudicating tribal disputes, and argue that the exhaustion requirement bars the district court from exercising jurisdiction over the pending state court action, because it involves a tribal dispute. Thus appellants analogize the pending state court action to an action pending in a tribal court, and argue that a federal court must stay its hand until the state court proceedings have concluded. LaPlante and National Farmers provide no support for this argument.
 
 
 23
 The LaPlante exhaustion rule is based squarely on "the Federal Government's longstanding policy of encouraging tribal self-government." LaPlante, 480 U.S. at 14; see National Farmers, 471 U.S. at 856 ("Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination."). This "policy reflects the fact that Indian tribes retain 'attributes of sovereignty over both their members and their territory' to the extent that sovereignty has not been withdrawn by federal statute or treaty." LaPlante, 480 U.S. at 14 (quoting United States v. Mazurie, 419 U.S. 544, 557 (1975)). Tribal courts, which "play a vital role in tribal self-government," must therefore be permitted to resolve pending cases without federal court interference. Id. at 14; see also id. at 16 ("[T]he federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.'" (quoting National Farmers, 471 U.S. at 857)); Basil Cook Enters. v. St. Regis Mohawk Tribe, 117 F.3d 61, 65 (2d Cir. 1997) (noting that the exhaustion requirement "promotes tribal autonomy and dignity").
 
 
 24
 Given the Supreme Court's rationale for imposing the tribal exhaustion rule, we see no reason to extend the rule dramatically by requiring a federal court to stay its hand until the conclusion of state court proceedings that happen to involve tribal issues. State courts do not play a "vital role in tribal self-government," LaPlante, 480 U.S. at 14 (emphasis added); they play no role at all. Similarly, a rule requiring the exhaustion of state court proceedings relating to tribal issues would not promote a sovereign tribe's "autonomy and dignity." Basil Cook Enters., 117 F.3d at 65. We accordingly decline appellants' invitation to extend the LaPlante rule beyond the tribal court context.
 
 B. Ex rel. Kennedy Exhaustion
 
 25
 In United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 16-17 (1925), the Supreme Court held that state court proceedings evolving out of conflicting state and tribal rulings had to be exhausted before a federal court could consider a petition for a writ of habeas corpus that raised the same subject matter. Appellants ask us to extend the Supreme Court's reasoning to the facts of the instant case.
 
 
 26
 Tyler was a habeas proceeding; Bowen's federal claim is asserted under 42 U.S.C. § 1983. This difference is dispositive. "In general, exhaustion of state remedies is not a prerequisite to an action under § 1983, even an action by a state prisoner. The federal habeas corpus statute, by contrast, requires that state prisoners first seek redress in a state forum." Heck v. Humphrey, 512 U.S. 477, 480-81 (1994) (internal quotation marks and citations omitted).
 
 
 27
 Appellants argue that Tyler's exhaustion principle is not limited to the habeas context but rather is based on a general proposition "that where federal courts are asked to rule on the jurisdiction of the courts of other sovereigns they should do so reluctantly and only after those courts have had an opportunity to completely decide their own jurisdiction." Appellants' only support for this broad reading is their assertion that at the time Tyler was decided, habeas petitioners were not routinely required to exhaust state court remedies. However, Tyler cites several habeas cases that reference the general rule that habeas petitioners must first exhaust state remedies before seeking federal relief. See Tyler, 269 U.S. at 17-18 (citing, inter alia, Davis v. Burke, 179 U.S. 399, 401-02 (1900) (stating that habeas exhaustion rule is "well settled"), and Ex Parte Royall, 117 U.S. 241, 250-53 (1886) (setting forth basic habeas exhaustion rule)). The holding of Tyler is therefore rooted in habeas jurisprudence, and has no application here.
 
 CONCLUSION
 
 28
 Finding no merit to the contentions raised in this appeal, we affirm the judgment of the district court.
 
 
 
 NOTES:
 
 
 [1]
 Specifically, the Court of Appeals for the Seneca Nation affirmed: (i) the November 18, 1994 order enjoining Ross John from acting as a Councillor; and (ii) the November 29, 1994 order enjoining Arthur John from acting as a Councillor and enjoining Maxine Jimerson, Geraldine Memmo and Susan Pierce from acting as employees of the Nation. On August 14, 1995, the Peacemakers Court ruled on the merits, and rejected Arthur John's claim to a seat on the Council on the ground that the outgoing president lacked authority to make appointments past election day. The Peacemakers Court also rejected the claims of the former employees, upholding the power of Bowen to reorganize tribal administration and staff.
 
 
 [2]
 The tribal exhaustion rule is subject to three narrow exceptions:
 "[1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction."
 Basil Cook Enters. v. St. Regis Mohawk Tribe, 117 F.3d 61, 65 (2d Cir. 1997) (quoting National Farmers, 471 U.S. at 856 n.21); see also LaPlante, 480 U.S. at 19 n.12.