United States Court of Appeals,

Fifth Circuit.

No. 93-8804

Summary Calendar.

Raymond Duran APODACA, et al., Plaintiffs-Appellants,

v.

Manny SILVAS, et al., Defendants-Appellees.

April 28, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before KING, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PER CURIAM:

I.

The appellants were members of the Ysleta del Sur Pueblo, a federally recognized Indian tribe. They sued members of the tribal counsel and the tribal census officer because they have been removed from the tribal membership roster. The appellants claimed that their removal was an unlawful action and seek declaratory and injunctive relief.

The appellants sued under 25 U.S.C. § 1300g-7, a provision of the Ysleta Del Sur Pueblo and Alabama and Coushatta Indian Tribes of Texas Restoration Act of 1987. That provision, entitled Tribal Membership, states:

**(a) In general**

The membership of the tribe shall consist of—

(1) the individuals listed on the Tribal Membership Roll approved by the tribe's Resolution No. TC-5-84 approved December 18, 1984, and approved by the Texas Indian

1

Commission's Resolution No. TIC-85-005 adopted on January 16, 1985;  and

    (2) a descendant of an individual listed on that Roll if the descendant—

        (i) has 1/8 degree or more of Tigua-Ysleta del Sur Pueblo Indian blood, and

        (ii) is enrolled by the tribe.

**(b) Removal from the tribal roll**

    Notwithstanding subsection (a) of this section—

    (1) the tribe may remove an individual from tribal membership if it determines that the individual's enrollment was improper;  and

    (2) the Secretary, in consultation with the tribe, may review the Tribal Membership Roll.

25 U.S.C. § 1300g-7.  The appellants point to subsection (b), which they claim prohibits the tribe from excluding members absent a finding that the original enrollment was "improper."  They contend that the tribe did not make any finding of impropriety.

The appellants also claim that the appellees violated Title II of the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301-1303 (1986) (ICRA).  They recognize that the U.S. Supreme Court in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), held that Congress did not intend the ICRA to form the basis for a federal civil cause of action.  The appellants seek to bring their ICRA claim under federal supplemental jurisdiction.  28 U.S.C. § 1367(a).

The district court found that the Restoration Act did not authorize a civil cause of action against either the tribe or the tribal officers.  It also referred to considerations of Indian

2

sovereignty and cited *Santa Clara Pueblo.* We find that the considerations of Indian sovereignty mentioned in *Santa Clara Pueblo* control this case. The Pueblo have the right to control their membership roster, and any federal litigation on that subject would disrupt the conduct of intratribal affairs, an area that the federal government has left to the tribe itself. We affirm the order of dismissal.

## II.

*Santa Clara Pueblo* addressed concerns about the composition of a tribe's membership roster, and states that providing a federal forum for the resolution of such disputes would illegitimately interfere with tribal autonomy and self-government. 436 U.S. at 59-60, 98 S.Ct. at 1677. It set forth the considerations of tribal sovereignty that form the backdrop against which § 1300g-7 must be read. The appellants argue that *Santa Clara Pueblo* sovereignty considerations notwithstanding, the Restoration Act places specific limits on the removal of tribal membership, making removal of tribal membership a proper subject for federal litigation.

The Restoration Act states that the tribe may remove an individual from tribal membership if it determines that the individual's enrollment was improper. 25 U.S.C. § 1300g-7(b)(1). The appellants see this provision as creating a federal cause of action against the tribe because such a limitation on removal procedures would be hollow without a private ability to bring suit. We disagree with this contention, and concur with the district court that, if anything, § 1300g-7(b)(1) protects either the

3

federal government by restricting the number of people who can claim entitlement of federal benefits as tribal members or the tribe itself by reaffirming its sovereign ability to determine its membership. The provision does not protect tribal members and cannot create a private right of action on their behalf.

As did the Court in *Santa Clara Pueblo,* we must turn from background considerations to those factors relevant for determining whether a cause of action is implicit in a statute not expressly providing one. An examination of the factors outlined in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether Congress intended to establish a federal cause of action suggests that the appellant cannot bring a federal case. These factors further indicate that the *Santa Clara Pueblo* reasoning is compelling in this tribal membership dispute.

In terms of the first *Cort* factor, an investigation into whether the plaintiffs belong to the class protected by the statute does not weigh in favor of the appellants because, as mentioned above, the federal government and the tribe benefit most from § 1300g-7. Second, there is no evidence that Congress created a federal civil remedy, especially because Congress probably would have used explicit language in doing so given the presence of *Santa Clara Pueblo* on the books. Third, any such private remedy would be inconsistent with a statute seeking to protect Indian sovereignty. And fourth, the cause of action is one that has traditionally been relegated to tribal law because, as mentioned in *Santa Clara Pueblo,* the right to determine tribal membership is crucial to the

4

existence of the tribe as an independent political community.

AFFIRMED.