**Ernest SELAM, Plaintiff–Appellant,**

v.

**WARM SPRINGS TRIBAL CORRECTIONAL FACILITY, Defendant–Appellee.**

**No. 96–36130.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1998.

Decided Jan. 21, 1998.

---

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for plaintiff-appellant.

Brian L. Gingerich, Karnopp, Peterson, Noteboom, Hubel, Hansen & Arnett, Bend, Oregon, for defendant-appellee.

Before: PREGERSON, TROTT and TASHIMA, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiff–Appellant Ernest Selam, an enrolled member of The Confederated Tribes of the Warm Springs Reservation of Oregon, was convicted of molesting two girls following a bench trial in tribal court. Selam appealed his convictions to the Warm Springs Tribal Court of Appeals, contending that he had been denied compulsory process. That appeal was rejected. Selam then filed a motion for habeas corpus relief in federal court, arguing again that he had been denied compulsory process and arguing for the first time that he had been denied rights secured under the Confrontation Clause of the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302(6). The district court, following the magistrate judge's recommendations, denied Selam's petition with prejudice. The court held that Selam had not been denied his right of compulsory process and that Selam had waived his confrontation clause claim by failing to exhaust it in the tribal court of appeals.

Selam filed this timely appeal, and raised the same two issues. For the reasons discussed below, we affirm.

## FACTS AND PRIOR PROCEEDINGS

In October 1993, Selam attempted to sexually abuse a ten-year-old girl.[1] Investigators later learned that, in mid-August 1993, Selam had sexually abused that victim's five-year-old sister. Like Selam, both of his victims were enrolled members of the Tribe, and both of the crimes occurred on the reservation.

These incidents formed the basis of the first and second cases against Selam, respectively. Selam was arrested and charged with attempted sexual abuse of the ten-year-old and sexual abuse of the five-year-old, offenses punishable under the Warm Springs Criminal Code. Selam entered not guilty pleas to both charges and elected to have his case tried by a tribal judge rather than a jury. Two separate trials were scheduled for March 2, 1994.

The court appointed lay Tribal Spokesperson Patricia Leno–Baker to represent Selam.[2] In preparation for the proceedings, Selam provided Leno–Baker with a list of five potential character witnesses. Although Leno–Baker requested Selam's assistance in contacting these witnesses, he made numerous excuses and did not assist Baker. Leno–Baker located three of these witnesses on her own, but two of them informed her that their testimony would be damaging to Selam. The tribal judge and Leno–Baker both advised Selam of his right to compel the appearance of witnesses on his behalf before the trials, but Selam did not ask the judge to subpoena anyone.[3] Accordingly, no defense witnesses were presented in either case except for Selam himself, who testified in both cases.

In the first trial, the ten-year-old victim testified that Selam had touched her "in private." The prosecution then presented Corey Clements, an investigator for the Warm Springs Police Department who had interviewed this child in January 1994. Clements testified that the ten-year-old had told her that Selam had attempted to put his hand

---

1. Because Selam's victims were minors, their names are omitted pursuant to the Child Victims and Witnesses Act of 1990, 18 U.S.C. § 3509(d)(B)(ii). Throughout this opinion, they will be distinguished by their ages.

2. Pursuant to tribal law, Selam had four options for representation at trial. He could represent himself, retain an attorney at his own expense, retain a lay Tribal Spokesperson of his choice at his own expense, or receive the assistance of an appointed Tribal Spokesperson for free. He selected the last option.

3. Only Selam's brother agreed to testify on Selam's behalf, but this witness did not appear at trial.

under her clothing. No other prosecution witnesses testified.

In the second case against Selam, the five-year-old victim did not testify. Instead, the prosecution introduced her statements through four witnesses: Dr. Leland Beamer, a physician who examined her in January 1994; the victim's parents, who testified how they learned of the abuse; and Investigator Clements, who repeated what she heard the child tell the doctor during her examination.

At the close of the first trial, the court found Selam guilty of attempted sexual abuse. When the second trial was concluded, the court found Selam guilty of sexual abuse. On April 20, 1994, the court reconvened for sentencing. Selam's punishment for his first crime (attempted sexual abuse) was a one-year suspended sentence. For Selam's second crime (sexual abuse) the court sentenced him to one year of imprisonment.[4]

Selam appealed both convictions to the Warm Springs Tribal Court of Appeals on numerous grounds, including the ground that he was denied compulsory process. Significantly, Selam did not argue in his appeal that the tribal court had denied him his right of confrontation. On July 19, 1994, the tribal court of appeals denied Selam a hearing and dismissed his appeal.

On October 13, 1994, Selam filed a motion for habeas corpus relief in federal court. On August 14, 1996, Magistrate Judge Coffin recommended that Selam's petition for habeas corpus be denied with prejudice, noting that Selam had waived his Confrontation Clause claim by not raising it in the tribal court of appeals. Selam did not object to the

magistrate judge's findings and recommendations. In an Order dated September 9, 1996, Judge Michael R. Hogan adopted the magistrate judge's findings and recommendations and entered judgment against Selam.

### STANDARD OF REVIEW

We review a district court's denial of a petition for writ of habeas corpus de novo. *Gretzler v. Stewart,* 112 F.3d 992, 998 (9th Cir.1997). Whether a tribal court's denial of compulsory process violated an accused's rights under the ICRA is determined de novo. *Fendler v. Goldsmith,* 728 F.2d 1181, 1190 (9th Cir.1984). Alleged confrontation clause violations are reviewed de novo. *United States v. George,* 960 F.2d 97, 99 (9th Cir.1992).

### ANALYSIS

#### I.

As a preliminary matter, the Tribe argues that, because Selam's petition for the writ of habeas corpus only seeks relief for his conviction for attempted sexual abuse of the ten-year-old girl, we should not reach the merits of his claims as they pertain to the circumstances of his other trial (for sexual abuse of the five-year-old girl).[5] The Tribe offers one piece of evidence to show that Selam did not raise his sexual abuse conviction in his habeas petition: Under the heading, "Nature of offense involved (all counts)," Selam wrote only "Attempted Sexual Abuse" and the docket number for that conviction.

---

4. For each crime, Selam also received one year of supervised probation (to run consecutively to his prison term), and 250 hours of community service (also to run consecutively to his prison term). Additionally, each sentence carried an injunction barring Selam from "any contact with the victims or any children under 12 years of age" unless his counselor approved.

5. The Tribe argues alternatively that we may not consider Selam's conviction for sexual abuse because Selam completed his one-year prison sentence on April 20, 1997, rendering the controversy moot.

The Tribe's argument ignores the fact that petitioner filed for habeas relief *while* he was serving

his prison sentence. Under these circumstances, mootness does not deprive this court of jurisdiction. *Sailer v. Gunn,* 548 F.2d 271, 273 n. 1 (9th Cir.1977) (citing *Carafas v. LaVallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968)). Furthermore, Selam's conviction for sexual abuse also carried a sentence of 250 hours of community service and barred Selam from contact with the victims or any children under 12 years of age unless his counselor approved. Because Selam still has a "legally cognizable interest in the outcome," *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1981) (citation and internal quotation marks omitted), his conviction for sexual abuse is not moot.

■ Ordinarily, "[h]abeas claims that are not raised in the petition before the district court are not cognizable on appeal." *Belgarde v. Montana*, 123 F.3d 1210, 1216 (9th Cir.1997) (quoting *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994)). But here, Selam *did* raise his sexual abuse conviction in his habeas petition, although not as clearly as he might have. Specifically, when Selam detailed his grounds for seeking habeas relief, he complained that "the *children* who testified for the prosecution lied and the court believed *them.* It was apparent the children had been coached to sound truthful even as *they* lied." Because each child only testified in (or was interviewed for) her own trial, the emphasized language indicates that Selam sought habeas relief for both convictions. Additionally, the magistrate judge actually applied the facts of both trials to Selam's claims. When asked to entertain a new claim raised on appeal, we have declined to do so where the habeas petitioner "did not include it in his petition to the district court, *and the district court did not address it below.*" *Willard v. California*, 812 F.2d 461, 465 (9th Cir.1987) (emphasis added).

In sum, Selam's allusion to both of his trials in his habeas corpus petition sufficiently raised both convictions so that the magistrate judge felt compelled to discuss the merits of Selam's habeas corpus claims with respect to each trial. For these reasons, we find cognizable Selam's compulsory process and confrontation clause claims as they pertain to both of his convictions.

## II.

■ Section 1302 of the ICRA guarantees to Indian criminal defendants the right to compulsory process. The pertinent provision reads:

No Indian tribe in exercising powers of self-government shall -

\* \* \* \* \* \*

(6) deny to any person in a criminal proceeding the right ... *to have compulsory process for obtaining witnesses in his favor* ....

25 U.S.C. § 1302(6) (1992) (emphasis added). To date, no published opinion has interpreted this particular clause of the ICRA. But because the ICRA clause is identical to the Compulsory Process Clause of the Sixth Amendment, the cases that interpret the Constitution speak directly to Selam's right of compulsory process under the ICRA. *Compare* 25 U.S.C. § 1302(6) *with* U.S. Const. amend. VI.

■ The Supreme Court has held that the Sixth Amendment's guarantee of compulsory process only is violated when the criminal defendant is arbitrarily deprived of "testimony [that] would have been relevant and material, and ... vital to the defense." *Washington v. Texas*, 388 U.S. 14, 16, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967). Accordingly, when determining whether a violation of a criminal defendant's right to compulsory process has occurred, we ask "two questions: (1) whether the trial court's *refusal* to allow [the defendant] to call [witnesses in his favor] was an arbitrary denial and (2) whether [those witnesses] ... could have presented testimony that would have been *relevant and material* to the defense." *United States v. Beye*, 445 F.2d 1037, 1041 (9th Cir.1971) (emphasis added).

The record shows that the tribal court did not "refuse" to provide Selam compulsory process. Quite to the contrary, Judge Langnese advised Selam of his right to compel the appearance of witnesses on his behalf before his trials began. Where the defendant himself knows that he may subpoena witnesses but elects not to, we have found no violation of the defendant's right to compulsory process. *Osborne v. United States*, 371 F.2d 913, 926–27 n. 15 (9th Cir.1967) (finding no violation of a defendant's right to compulsory process where "[t]he court at no time denied such right to [the defendant], and in fact frequently advised him that he had a right to obtain subpoenas at Government expense.... [The defendant] knew the proper procedure required to obtain process, but he simply never bothered to comply.").

■ In these circumstances, we agree that Selam has not shown that the tribal court refused him compulsory process. Because we find that Selam has not satisfied the first prong of *Beye*, we need not consider

whether, under the second prong of *Beye*, testimony that was relevant and material to his defense was excluded.

## III.

Selam contends also that, by allowing the prosecution to present hearsay evidence at both trials, the tribal court violated his right to confront witnesses under Section 1302 of the ICRA. The pertinent provision states:

No Indian tribe in exercising powers of self-government shall -

\* \* \* \* \* \*

(6) deny to any person in a criminal proceeding the right ... *to be confronted with the witnesses against him.* ...

25 U.S.C. § 1302(6) (1992) (emphasis added).

■ A review of the record shows that Selam did not present this claim to the Warm Springs Tribal Court of Appeals. When Selam appealed his convictions, he completed a form notifying the tribal court of appeals of his reasons for appealing. In a section marked, "The reason(s) that I am appealing is/are," Selam wrote:

[V]iolation of Indian Civil Rights which states, "No Indian tribe shall (6) deny to any person in a criminal proceeding the right to have the compulsory process for obtaining witnesses in his favor.["] Defe[n]dant ask[ed] police to question certain people who he felt could bear witness to his credibility and character and also [to] question another person who was suppose[d] to be at the scene of the 'Attempt' charge and they neglected to do so after saying they would.

Accordingly, the district court, following the magistrate judge's recommendation, considered this ICRA claim "waived."

We agree. The Supreme Court's policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims. *See, e.g., Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 890, 106 S.Ct. 2305, 2312–13, 90 L.Ed.2d 881 (1986); *Williams v. Lee*, 358 U.S. 217, 220–21, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251 (1959). Additionally, "[a] federal court's exercise of jurisdiction over mat-

ters relating to reservation affairs can ... impair the authority of tribal courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987). Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the Supreme Court to insist that "the federal court stay[ ] its hand until after the Tribal Court has had a full opportunity ... to rectify any errors it may have made." *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985). The Supreme Court specifically has instructed us to require exhaustion of tribal appellate court remedies in situations like this one because "[t]he federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts," *LaPlante*, 480 U.S. at 16–17, 107 S.Ct. at 977.

We have recognized, however, that exhaustion of tribal court claims " 'is not an inflexible requirement.' " *United States ex rel. Cobell v. Cobell*, 503 F.2d 790, 793 (9th Cir. 1974) (citing *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140, 1146 (8th Cir.1973), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975)). Instead, we have stated that:

A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights. Thus this Court must determine whether exhaustion is appropriate in the case at bar.

*Cobell*, 503 F.2d at 793 (citing *O'Neal*, 482 F.2d at 1146).

■ An application of this balancing process to the circumstances of Selam's trials persuades us not to assume jurisdiction over Selam's claim that he was denied his right of confrontation in either of his trials. Specifically, Selam was a member of the Warm Springs Tribe who was tried for crimes that he committed on the reservation against other member Indians. A Tribe's "right of internal self-government includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanc-

tions." *United States v. Wheeler,* 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978). As we noted recently,

> [W]hen a tribal court attempts to exercise criminal jurisdiction over a person not a member of a tribe, no requirement of exhaustion need be enforced. *It is different when the petitioner is a member of the tribe. Then, by virtue of her consent to tribal membership, she is bound to follow the procedures of the tribe if they are consistent with the Indian Civil Rights Act.* Having failed to do so, she is not entitled to have her petition for habeas relief considered.

*Wetsit v. Stafne,* 44 F.3d 823, 826 (9th Cir. 1995) (emphasis added).

■■■ The Tribe's procedures were consistent with the ICRA. First, unlike the petitioner in *Cobell,* Selam cannot complain that he was extended "no invitation to participate in the tribal appellate process." *Cobell,* 503 F.2d at 793–94. On two occasions during sentencing, the tribal court judge informed Selam that he could appeal his convictions to the tribal court of appeals. Second, Selam's original notice to the tribal court of appeals mentioned six grounds for appeal, indicating that he did not consider his appeal futile.[6] Third, even though the Tribe provided only a summary form of appeal, a tribe's summary adjudication of appeals does not by itself render appeals futile or remedies inadequate. This court has recognized that, "except to the extent demanded by the [ICRA], the structure and procedure of [tribal] courts may be determined by the tribes themselves." *Smith v. Confederated Tribes of Warm Springs,* 783 F.2d 1409, 1412 (9th Cir.1986) (quoting F. Cohen, *Handbook of Federal Indian Law* 251 (1982 ed.) (internal quotation marks and footnote omitted)). Finally, in the few cases where we have relaxed the exhaustion requirement, the litigant was able to show either that exhaustion would have been futile or that the tribal court of appeals of-

fered no adequate remedy. *See St. Marks v. Chippewa–Cree Tribe,* 545 F.2d 1188, 1189–90 (9th Cir.1976); *Cobell,* 503 F.2d at 793–94. Selam has demonstrated neither.

In sum, the district court properly refused to exercise jurisdiction over Selam's unexhausted claim that he was denied his right of confrontation in either of his trials. Out of respect for the sovereignty of the Tribe and for principles of comity, we decline to reach the merits of Selam's unexhausted claim.

## CONCLUSION

For the reasons stated above, we affirm the district court's denial of the writ of habeas corpus.

---

**6.** Of course, Selam's appeal of his right-of-confrontation claim in the tribal court of appeals would be futile now because tribal appellate procedure only entitled him to appeal within thirty days of his conviction. But if we were to assume jurisdiction over an unexhausted claim solely on the basis that it is now too late ("futile") for

Selam to bring it, this would eviscerate the tribal court exhaustion requirement-at least in cases where parties have a limited period of time in which to file an appeal. Therefore, we decline to consider the appeal of a judgment in the tribal courts futile just because the dissatisfied party has neglected to file a timely appeal.