**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATHY LYNNETTE LEWIS, LARRY
PAUL LEWIS, JR., JERRY LEE LEWIS,
and CHAD ELLIOTT LEWIS,
            *Plaintiffs-Appellants,*

v.

GAIL NORTON, in her capacity as
the Secretary of the Department of
the Interior; TERRY VIRDEN, in his
official capacity as Deputy
Commissioner of the Bureau of
Indian Affairs, a bureau within the
Department of Interior; PHILIP N.
HOGEN, in his official capacity as
Chairman of National Indian
Gaming Commission,
            *Defendants-Appellees.*

No. 03-17207

D.C. No.
CV-03-01476-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
April 5, 2005—Pasadena, California

Filed September 13, 2005

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson
and Stephen S. Trott, Circuit Judges.

Opinion by Chief Judge Schroeder

13175

## COUNSEL

Brian C. Leighton, Clovis, California, for the plaintiffs-appellants.

Debora G. Luther, Assistant U.S. Attorney, Sacramento, California, for the defendant-appellees.

## OPINION

SCHROEDER, Chief Judge:

The plaintiffs-appellants are siblings who brought this action against the United States claiming that they are entitled to recognition as members of the Table Mountain Rancheria, a federally-recognized Indian tribe, and therefore to share in the revenue of that tribe's very successful casino near Fresno, California. Although their claim to membership appears to be a strong one, as their father is a recognized member of the tribe, their claim cannot survive the double jurisdictional whammy of sovereign immunity and lack of federal court jurisdiction to intervene in tribal membership disputes. *See*

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978). We therefore must affirm the district court's dismissal of the action.

The plaintiffs-appellants are Kathy Lynette Lewis, Larry Paul Lewis, Jerry Lee Lewis, and Chad Elliott Lewis, four siblings whose father was admitted to the Table Mountain Rancheria in 2000. The defendants-appellees are officials of the Department of Interior, the Bureau of Indian Affairs, and the National Indian Gaming Commission.

The key events giving rise to this dispute are those surrounding the recognition of the Table Mountain Rancheria's status in 1983, after the tribe had been disbanded in 1959. In 1983, the United States District Court for the Northern District of California issued a judgment ordering the Secretary of the Interior to list the Table Mountain Band of Indians as an Indian Tribal Entity pursuant to federal law. *Table Mountain Rancheria Ass'n v. Watt*, No. C-80-4595-MHP (N.D. Cal. 1983). Following that decision, and the publication of the notice in the Federal Register, the Table Mountain Rancheria established its constitution. The Constitution provides that membership of the Table Mountain Rancheria shall consist of "[a]ll lineal descendants of persons named on the base roll . . . provided such descendants possess at least one-quarter (1/4) degree California Indian blood, regardless of whether the ancestor through whom eligibility is claimed is living or deceased."

The plaintiffs allege that they satisfy these qualifications for membership. They further allege that their natural father, a current member, and their natural grandfather, natural grandmother, and natural great-grandmother were all listed on the base roll of the tribe. The plaintiffs allege that they filed applications for membership with the tribe in November of 2000, but the tribe has never responded.

The plaintiffs filed this action in 2003. They seek declaratory and injunctive relief (1) ordering the agencies to order the

tribe to recognize the plaintiffs as members, (2) prohibiting the agencies from providing government funds to the tribe until it recognizes the plaintiffs as members, and (3) ordering the agencies to prohibit the tribe from disbursing casino profits to its recognized members until it recognizes the plaintiffs as members. The district court dismissed the case under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The plaintiffs appealed.

## DISCUSSION

**[1]** We review de novo dismissals for lack of subject matter jurisdiction. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The Supreme Court held in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), that a tribe is immune from federal court jurisdiction in disputes regarding challenges to membership in the tribe. That case involved a tribal membership ordinance denying tribal membership to children of female members who marry outside the tribe, while extending membership to children of male members who marry outside the tribe. *Id.* at 51. A female member who had married outside the tribe brought suit for declaratory and injunctive relief against the tribe, alleging that the membership criteria violated the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301-1303. The Supreme Court held that "Indian tribes are 'distinct, independent political communities [that] retain[ ] their original natural rights' in matters of local self-government." *Id.* at 55; *see also Montana v. United States*, 450 U.S. 544, 564 (1981); William C. Canby, Jr., *American Indian Law* 187 (West 1998). The Court stated that "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara*, 436 U.S. at 72 n. 32. The Court therefore held that it did not have jurisdiction over the tribal membership dispute. *Id.* at 72.

**[2]** Following *Santa Clara*, we have recognized that "the tribal self-government exception is designed to except purely

intramural matters such as conditions of tribal membership . . . from the general rule that otherwise applicable federal statutes apply to Indian tribes." *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985); *see also Apodaca v. Silvas*, 19 F.3d 1015, 1016 (5th Cir. 1994); *Smith v. Babbitt*, 100 F.3d 556, 559 (8th Cir. 1996). Courts have held that tribal immunity bars suits to force tribes to comply with their membership provisions, as well as suits to force tribes to change their membership provisions. *See Ordinance 59 Ass'n. v. U.S. Dep't of the Interior Sec'y*, 163 F.3d 1150, 1157 (10th Cir. 1998); *Apodaca*, 19 F.3d 1015-16.

**[3]** The plaintiffs here nevertheless contend there was a waiver of tribal immunity for this suit when the tribe itself went to court in 1983 to obtain the judgment recognizing the tribe and its membership roll at that time. A resort to litigation on the part of the tribe can, of course, result in some waiver of immunity, but our leading case in that regard teaches that the waiver must be a narrow one in order to be consistent with general principles of sovereign immunity. *McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989).

**[4]** *McClendon* must guide us here. In that case, a plaintiff brought suit against a tribe, alleging that the tribe violated its lease agreement. *Id.* at 629. The plaintiff argued that the tribe waived its sovereign immunity when, more than ten years earlier, the United States initiated an ownership dispute on the tribe's behalf against the plaintiffs' predecessor-in-interest. *Id.* We held that the tribe waived its immunity for purposes of establishing its interest in the land, but the tribe did not waive its immunity for the resolution of later disputes to enforce the lease. *Id.* at 631. We stated that "a tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts." *Id.* at 630.

**[5]** Given the principles recognized in *Santa Clara* and *McClendon*, we are unable to hold that the plaintiffs may

maintain this claim. The Table Mountain Rancheria's waiver of sovereign immunity in 1983 to obtain federal recognition of the tribe and its membership roll at that time did not constitute a waiver of the tribe's sovereign immunity in perpetuity for the resolution of all claims to tribal membership.

The plaintiffs contend that there is no tribal remedy for their claims, and that this fact should confer jurisdiction on the federal courts. Under the tribe's constitution, the plaintiffs have recourse in the Tribal Council or the General Council. The plaintiffs argue that these remedies are inadequate, because those bodies are comprised of tribal members who do not want to admit the plaintiffs to the tribe, and because the tribe has not acted on their applications for membership in the tribe. The plaintiffs stress that there was an adequate tribal remedy in *Santa Clara*, *see* 436 U.S. at 65-66, and argue that this fact makes that case materially distinguishable.

**[6]** The Court in *Santa Clara* held that nonjudicial institutions like Tribal and General Councils can be appropriate forums. The Court stated: "Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians. Nonjudicial tribal institutions have also been recognized as competent law-applying bodies." 436 U.S. at 65-66 (internal citations omitted).

**[7]** Following *Santa Clara*, the Tenth Circuit held that General Councils can be suited to resolve an intra-tribal conflict over tribal membership. *Ordinance 59 Ass'n*, 163 F.3d at 1157, 1160. The Tribal Council and the General Council in this case are not inadequate merely because they have not granted the plaintiffs membership. The issue is not whether the plaintiffs' claims would be successful in these tribal forums, but only whether tribal forums exist that could potentially resolve the plaintiffs' claims. *See, e.g., id.* at 1157; *Smith*, 100 F.3d at 559. We therefore must recognize the

Tribal Council and the General Council as competent law-applying bodies in this case.

**[8]** Finally, the plaintiffs argue that the federal courts have jurisdiction over this dispute under the Indian Gaming Regulatory Act ("IGRA"), 15 U.S.C. §§ 2701-2721, and related regulations, 25 C.F.R. § 290. The IGRA waives tribal sovereign immunity in the narrow category of cases where compliance with the IGRA is at issue. *See Mescalero Apache Tribe v. New Mexico*, 131 F.3d 1379, 1385 (10th Cir. 1997). However, the IGRA and its related provisions do not constitute a broad waiver of sovereign immunity covering an intra-tribal membership dispute whenever gaming revenues are at stake. *See Smith*, 100 F.3d at 557-59. To the contrary, 25 C.F.R. § 290.23 explicitly states that "disputes arising from the allocation of net gaming revenue and the distribution of per capita payments" are to be resolved through "a tribal court system, forum or administrative process." The IGRA and related regulations therefore do not waive the tribe's sovereign immunity over this intra-tribal membership dispute.

**[9]** The plaintiffs of course did not sue the tribe directly, but filed this action against the federal agencies responsible for the regulation of tribal affairs, including gaming. They did so because they recognized that tribal immunity would create, at the least, a serious obstacle. For the very reasons we have already outlined that compel tribal immunity with respect to the plaintiffs' claims, their efforts to do an end run around tribal immunity must also fail. The Tenth Circuit has expressly held that plaintiffs cannot get around the *Santa Clara* rule by bringing suit against the government, rather than the tribe itself. *See Ordinance 59 Assn.*, 163 F.3d at 1159-60. We agree. As the Tenth Circuit stated, a "federal court order compelling the [federal agency] to comply with the requests of [alleged members] would not have the effect of enrolling [alleged members] in the tribe because tribes, not the federal government, retain authority to determine tribal membership." *Id.* at 1160; *see also Confederated Tribes of the*

*Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991).

**[10]** These doctrines of tribal sovereign immunity were developed decades ago, before the gaming boom created a new and economically valuable premium on tribal membership. *See, e.g.*, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 48 (1996). We agree with the district court's conclusion that this case is deeply troubling on the level of fundamental substantive justice. Nevertheless, we are not in a position to modify well-settled doctrines of tribal sovereign immunity. This is a matter in the hands of a higher authority than our court.

**AFFIRMED.**