ORDER AND AMENDED OPINION
ORDER
The opinion and dissent filed on December 22, 2009, and reported at 590 F.3d 751 are hereby amended. An amended opinion and dissent are filed concurrently with this order.
No petition for rehearing or rehearing en banc was filed within the original time period, and that time period has now expired. No subsequent petitions for rehearing or rehearing en banc shall be filed.
IT IS SO ORDERED.
OPINION
N.R. SMITH, Circuit Judge:
The Pechanga Band of the Luiseño Mission Indians (“Pechanga Tribe”) disenrolled a number of its members (“Appellants”) for failing to prove their lineal descent as members of the Tribe. Federal courts generally lack jurisdiction to consider any appeal from the decision of an Indian tribe to disenroll one of its members. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Appellants, therefore, brought this petition for habeas corpus under 25 U.S.C. § 1303 of the Indian Civil Rights Act (“ICRA”), claiming their disenrollment by members of the Pechanga Tribal Council (“Appellees”) was tantamount to an unlawful detention. Despite the novelty of this approach and despite the potential injustice of this situation, we nonetheless lack subject matter jurisdiction to consider this claim, because Appellants were not detained. Therefore, Appellants cannot bring their claims under § 1303 of the ICRA and we must affirm the district court. Only Congress can aid these appellants.
I. BACKGROUND
The Pechanga Tribe is a federally-recognized Indian tribe. 72 Fed.Reg. 13648, 13650 (Mar. 22, 2007). The Tribe’s ultimate governing authority consists of all of the adult members of the Tribe (“General Membership”). On December 10, 1978, the Pechanga Tribe adopted the Constitution and Bylaws of the Temecula Tribe of Luiseño Mission Indians (“Pechanga Constitution”). Article II of the Pechanga Constitution provides:
Membership is an enrolled member documented in the Band’s Official Enrollment Book of 1979.
Qualifications for membership of the Temecula Band of Luiseno Mission Indians Are:
A. Applicant must show proof of Lineal Descent from original Pechanga Temecula people.
B. Adopted people, family or Band, and non-indians cannot be enrolled. Exception: People who were accepted in the Indian Way prior to 1928 will be accepted.
C. If you have ever been enrolled or recognized in any other reservation you cannot enroll in Pechanga.
At issue here is subsection A, requiring applicants to “show proof of Lineal Descent from original Pechanga Temecula people.” In late 2002 and early 2003, the Enrollment Committee received information from its members alleging that a number of Pechanga Tribe members were not *916 lineal descendants from the original Peehanga Temecula people. Therefore, according to the Pechanga Enrollment Disenrollment Procedure (“Disenrollment Procedures”), the Enrollment Committee was required to investigate the allegations. Allegations surrounded five lines of descent that allegedly did not qualify for membership under the Pechanga Constitution.
According to the Pechanga Disenrollment Procedure, disenrollment is “revoking a person’s membership when it is found that they do not meet the requirements set forth on the enrollment application which was approved by the Band.” The Disenrollment Procedures were adopted by the Pechanga Tribe (1) to correct mistakes that resulted when tribal membership was mistakenly approved and (2) to provide a process that would allow a fair hearing in the disenrollment procedure. Under the Disenrollment Procedures, the Enrollment Committee initiates a disenrollment process against those individuals allegedly not qualifying for membership in the Tribe. After the initiation of the disenrollment, the Enrollment Committee must provide adequate notice to the individual to be summoned to a meeting with the Enrollment Committee. The notice must (1) state that the Enrollment Committee has questions regarding enrollment; (2) stress the importance of responding to the notice; and (3) request a meeting within thirty days of the response. Unless the person receiving the notice chooses to be automatically disenrolled, he or she must respond. Once a response has been filed, the Enrollment Committee has thirty days to set up a meeting. At that meeting, the Enrollment Committee must show specific evidence that would prove that the documentation provided for enrollment does not provide evidence of lineal descent. If the Enrollment Committee provides such evidence, the individual then is allowed another thirty days to provide additional information to prove her or his lineal descent. If the individual provides further evidence that satisfies the Enrollment Committee as to his lineal descent, the process is terminated and the individual keeps his or her membership status. If the Enrollment Committee is not satisfied by the further evidence, the individual will be disenrolled and the Tribal Council is notified of the disenrollment.
If the Enrollment Committee fails to follow these steps or is negligent in any way, the individual can appeal to the Tribal Council for a fair hearing. At the hearing, the Tribal Council only reviews the documentation that the Enrollment Committee reviewed. The individual is not entitled to legal representation at the hearing. If the Tribal Council finds there was an error, the Enrollment Committee reevaluates the case. If the appeal is successful, membership will be reinstated.
Disenrollment does not mean that a person is banished from the Pechanga Reservation. The Pechanga Tribe instead has specific procedures for exclusion and eviction. These requirements are set forth in the “Exclusion and Eviction Regulations.” Under these regulations, the Pechanga Tribe may exclude and or evict someone from the reservation for: “(1) [violating tribal laws and ordinances; (2)[c]reating conditions which pose a threat to the public health, safety and welfare; (3)[e]ngag-ing in criminal activities on the Pechanga Reservation, by finding of the Tribal Council, or being convicted of one or more felony crimes; (4)[b]eing declared a public nuisance by the Tribal Council; [or] (5)[c]reating a breach of peace, including but not limited to public drunkenness.” The Exclusion and Eviction Regulations dictate the procedure to evict and or exclude and the opportunity to appeal such exclusion.
*917 In early 2003, the Enrollment Committee began addressing the allegations regarding the lineal descent of certain members. On March 7, 2003, the Tribal Council issued a Notice and Order regarding pending disenrollment matters. The Notice and Order mandated that the Enrollment Committee: (1) “use a fair and impartial decision by a majority of the committee to review a file;” (2) follow Robert’s Rules of Order; and (3) allow adequate time for presentation of evidence as required under the Disenrollment Procedures.
Sometime before March 7, 2003, the Enrollment Committee determined that the first three lines of descent met the membership criteria. Then it turned its attention to those members who claimed a lineal descent through Paulina Hunter. On May 3, 2005, after a proper vote, the Enrollment Committee summoned Appellants and notified them that the Enrollment Committee believed there were grounds to initiate the disenrollment process. The summonses (1) notified Appellants that the disenrollment procedures had been initiated, (2) requested additional information concerning Appellants’ family history, and (3) notified Appellants that they were required to set up an Initial Meeting with the Enrollment Committee.
Meetings were held with Appellants in June of 2005. The Enrollment Committee provided Appellants with a copy of all factual records in its possession. The Enrollment Committee then stated its concerns about each Appellant’s claim of lineal descent. Appellants were also notified that they had thirty days to submit information supporting their claim of lineal descent. The Enrollment Committee emphasized that Appellants’ enrollment would be measured by the Pechanga Constitution’s requirements. The Enrollment Committee advised each Appellant that no decision would be made until it received all additional information.
On March 16, 2006, the Enrollment Committee (after review of the full record) disenrolled Appellants for failure to prove lineal descent from an original Pechanga Temecula person. Appellants exercised their right to appeal to the Tribal Council. The Tribal Council held hearings on July 21, 2006. The Tribal Council affirmed the Enrollment Committee, “finding: (1) there was no evidence of unfair or partial treatment of Appellants by the Enrollment Committee; (2) there was no evidence of negligence in the handling of Appellants’ case by the Enrollment Committee; and (3) there was insufficient proof that the Enrollment Committee violated the disenrollment procedures.”
Appellants then filed a petition for writ of habeas corpus in the Central District of California. Appellants moved for summary judgment. Appellees filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that the district court lacked subject matter jurisdiction. The district court granted the Motion to Dismiss. Appellants appealed the district court decision.
II. DISCUSSION
We review de novo dismissals for lack of subject matter jurisdiction under Rule 12(b)(1). Carson Harbor Village, Ltd. v. City of Carson, 353 F.3d 824, 826 (9th Cir.2004). We also review de novo a district court’s denial of a petition for writ of habeas corpus under the ICRA. Selam v. Warm Springs Tribal Corr. Facility, 134 F.3d 948, 951 (9th Cir.1998).
Ordinarily, federal courts lack jurisdiction to consider an appeal from the decision of an Indian Tribe to disenroll one of its members. “A tribe’s right to define its own membership for tribal purposes *918 has long been recognized as central to its existence as an independent political community.” Santa Clara Pueblo, 436 U.S. at 72 n. 32, 98 S.Ct. 1670; Cherokee Intermarriage Cases, 203 U.S. 76, 27 S.Ct. 29, 51 L.Ed. 96 (1906). Because of this precedent, Appellants did not directly appeal the Tribe’s decision. Instead, they petitioned the court for a writ of habeas corpus under the ICRA to collaterally challenge their disenrollment.
Section 1303 of the ICRA provides: “The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.” 25 U.S.C. § 1303. The term “detention” in the statute must be interpreted similarly to the “in custody” requirement in other habeas contexts. See Moore v. Nelson, 270 F.3d 789, 791 (9th Cir.2001) (“There is no reason to conclude that the requirement of ‘detention’ set forth in the Indian Civil Rights Act § 1303 is any more lenient than the requirement of ‘custody’ set forth in the other habeas statutes.” (citation omitted)). Further, “[g]iven the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters.” Santa Clara Pueblo, 436 U.S. at 72 n. 32, 98 S.Ct. 1670.
Therefore, an ICRA habeas petition is only proper when the petitioner is in custody. Id. at 791 (explaining the custody requirement).
We have also held that a litigant must first exhaust tribal remedies before properly bringing a petition for writ of habeas corpus. Selam, 134 F.3d at 953-54 (explaining the exhaustion requirement); see also Felix S. Cohen, Handbook of Federal Indian Law § 9.09 (2005). Even when a federal court has jurisdiction over a claim, if the claim arises in Indian country, the court is required to “stay its hand” until the party has exhausted all available tribal remedies. Cohen, Handbook of Federal Indian Law § 7.04 (citing Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); Nat’l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 857, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)). “The Supreme Court’s policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims.” Selam, 134 F.3d at 953. There is authority for relaxing the exhaustion requirement where the party can show that exhaustion would be futile or that tribal courts offer no adequate remedy. See id. at 954.
Therefore, “all federal courts addressing the issue mandate that two prerequisites be satisfied before they will hear a habeas petition filed under the ICRA: [ (1) ] The petitioner must be in custody, and [ (2) ] the petitioner must first exhaust tribal remedies.”. Cohen, Handbook of Federal Indian Law § 9.09 & § 9.09 n. 280. We therefore have no jurisdiction to hear a petitioner’s claim for habeas corpus, unless both of these conditions are met. Any expansion of this jurisdiction must come from Congress, not by decision of this court.
I. Appellants do not meet the requirements for the court to have jurisdiction under § 1303 of the ICRA.

A. Appellants were not detained/in custody.

Appellants contend that (1) the actual restraints, (2) the potential restraints, and (3) their lost Pechanga identity all amount to detention under § 1303. We do not agree.
1.
Appellants contend that, because they have been denied access to the Senior
*919 Citizens’ Center, cannot go to the health clinic, and their children can no longer go to tribal school, they have been detained. We disagree. Jones v. Cunningham requires that “conditions and restrictions ... significantly restrain [one’s] liberty” in order to invoke § 1303 jurisdiction. 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). The Second Circuit has said that “under Jones and its progeny, a severe actual or potential restraint on liberty” is necessary for jurisdiction under § 1303. See Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 880 (2d Cir.1996); see also Shenandoah v. Halbritter, 275 F.Supp.2d 279, 285 (N.D.N.Y.2003) (quoting Poodry for the same proposition). We agree with our colleagues on the Second Circuit and hold that § 1303 does require “a severe actual or potential restraint on liberty.” Poodry, 85 F.3d at 880.
In the case before us, the denial of access to certain facilities does not pose a severe actual or potential restraint on the Appellants’ liberty. Appellants have not been banished from the Reservation. Appellants have never been arrested, imprisoned, fined, or otherwise held by the Tribe. Appellants have not been evicted from their homes or suffered destruction of their property. No personal restraint (other than access to these facilities) has been imposed on them as a result of the Tribe’s actions. Their movements have not been restricted on the Reservation. Faced with a similar situation, the Second Circuit also determined that less severe restraints such as loss of one’s “voice” in the community, loss of health insurance, loss of access to tribal health and recreation facilities, loss of quarterly distributions to tribal members, and loss of one’s place on the membership roles of the tribe are simply “insufficient to bring plaintiffs within [the] ICRA’s habeas provision.” Shenandoah v. U.S. Dept. of Interior, 159 F.3d 708, 714 (2d Cir.1998).
Appellants contend that the denial of access to these facilities is similar to the restraint found in Poodry. This is not Poodry. In Poodry, the petitioners were convicted of treason, sentenced to permanent banishment, and permanently lost any and all rights afforded to tribal members. See Poodry, 85 F.3d at 876, 878. Appellants have not been convicted, sentenced, or permanently banished. We therefore hold that the limitation of Appellants’ access to certain tribal facilities does not amount to a “detention.”
2.
Appellants contend that, as nonmembers of the tribe, they are “under a continuing threat of banishment/exclusion.” No court has held that such a threat is sufficient to satisfy the detention requirement of § 1303.
The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.
Hensley v. Mun. Court, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Applying this principle, we previously held that a threat of confinement is not severe nor immediate enough to justify the writ. Edmunds v. Won Bae Chang, 509 F.2d 39, 40-41 (9th Cir.1975) (denying habeas relief under 28 U.S.C. §§ 2241, 2254). In Edmunds, the petitioner was subject to a court-imposed fine, which could be enforced by jail time. Id. at 41. The court held, however, that until confinement is *920 imminent (like the confinement in Hensley ) there can be no justification for use of the habeas corpus remedy. Id. We see no reason not to analogize to the court’s construction of the criminal habeas corpus provisions in Edmunds. Therefore, we hold that the potential threat of future eviction is not sufficient to satisfy the detention requirement of § 1303.
Appellants argue that, while no such procedures have been commenced to exclude or evict Appellants, there is a potential that they could be excluded. Under the Pechanga Non-Member Reservation Access and Rental Ordinance “[ajccess to and residency within the Reservation is a privilege which may be granted or denied to an individual upon proper authority of the Pechanga Band.” However, the Pechanga Tribe enacted exclusion and eviction regulations that provide a process for eviction in an effort to protect law and order on the reservation and to provide uniform procedures for exclusion and eviction. These provisions apply equally to those who have been disenrolled and those who are current members of the tribe. Appellants admit they have never been subjected to exclusion or eviction proceedings.
3.
 Appellants lastly contend that disenrollment, stripping them of their Pechanga citizenship, is enough of a significant restraint on their liberty to constitute a detention. While we have the most sympathy for this argument, we find no precedent for the proposition that disenrollment alone is sufficient to be considered detention under § 1303. While “Congress’ authority over Indian matters is extraordinarily broad ... the role of courts in adjusting relations between and among tribes and their members [is] correspondingly restrained.” Santa Clara Pueblo, 436 U.S. at 71, 98 S.Ct. 1670. Further, “[a] tribe’s right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.” Id. at 71 n. 32, 98 S.Ct. 1670 (citing Roff v. Burney, 168 U.S. 218, 18 S.Ct. 60, 42 L.Ed. 442 (1897); Cherokee Intermarriage Cases, 203 U.S. 76, 27 S.Ct. 29, 51 L.Ed. 96). We have also noted that “[a]n Indian tribe has the power to define membership as it chooses, subject to the plenary power of Congress.” Williams v. Gover, 490 F.3d 785, 789 (9th Cir.2007). Thus (while Congress may have authority in these matters) in the complete absence of precedent, we cannot involve the courts in these disputes.
This court is without jurisdiction to review direct appeals of tribal decisions regarding disenrollment of members. See, e.g., Santa Clara Pueblo, 436 U.S. at 72 n. 32, 98 S.Ct. 1670. We cannot circumvent our lack of jurisdiction over these matters by expanding the scope of the writ of habeas corpus to cover exactly the same subject matter. At its heart, this ease is a challenge to disenrollment of certain members by the tribe. It is precisely because we lack jurisdiction to hear such claims, however, that Appellants brought this case under habeas corpus law. We find (and the parties direct us to) nothing in the legislative history of § 1303 that suggests the provision should be interpreted to cover disenrollment proceedings. Because nothing in the legislative history suggests otherwise and because binding precedent precludes review of disenrollment proceedings, we cannot accept Appellants’ invitation to expand habeas corpus here.
Appellants contend that their disenrollment is analogous to denaturalization. We disagree. Appellants cite Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), to support this proposition. The court in Trop was confronted with the constitutionality of a statute that revoked *921 United States citizenship for desertion during wartime even if the desertion was unrelated to any actions on behalf of a foreign government. Id. at 87-88, 78 S.Ct. 590. Trop is inapposite to this case. In Trop the statute left the defendant stateless. Id. Further, the statute was penal in nature. Id. at 96, 78 S.Ct. 590. Here Appellants have not been left stateless, and nothing in the record indicates that the disenrollment proceedings were undertaken to punish Appellants. Therefore, Trop is not controlling.
We do not wish to minimize the impact of the Tribe’s membership decision on Appellants. Indeed, we recognize that Appellants have suffered a significant loss. Nevertheless, such loss is simply not equivalent to detention. This is not the first time that we have noted that we do not have jurisdiction to review membership decisions, even when the results of such decisions appear unfair. In Lewis v. Norton, 424 F.3d 959 (9th Cir.2005), the plaintiff-appellants likewise sought judicial review of a tribal membership decision. We stated, “[ajlthough [plaintiffs’] claim to membership appears to be a strong one, as their father is a recognized member of the tribe, their claim cannot survive the double jurisdictional whammy of sovereign immunity and lack of federal court jurisdiction to intervene in tribal membership disputes.” Id. at 960. In Lewis we further noted that our jurisdiction in these matters may prevent us from intervening even when fairness may seem to dictate otherwise. There we said, “[w]e agree with the district court’s conclusion that this case is deeply troubling on the level of fundamental substantive justice. Nevertheless, we are not in a position to modify well-settled doctrines of sovereign immunity. This is a matter in the hands of a higher authority than our court.” Id. at 963.

B. Appellants have not exhausted their tribal remedies in order to challenge a claim of banishment from the reservation.

Appellants argue that disenrollment is similar to banishment and that they are therefore detained. However, Appellants have not been banished from the Reservation. The Pechanga Tribe has established uniform Exclusion and Eviction Regulations for excluding both members and nonmembers of the tribe from the Reservation. The Exclusion and Eviction Regulations also establish the procedures for appealing one’s exclusion or eviction. Appellants have not been subjected to any exclusion or eviction proceedings. Therefore, they have not exhausted their claims for exclusion from the reservation or denial of access to it as established in the Exclusion and Eviction Regulations. We thus lack jurisdiction over any of Appellants’ claims for exclusion or eviction.
III. CONCLUSION
The district court properly dismissed Appellants’ action for lack of subject matter jurisdiction. Appellants were not detained and did not exhaust their tribal remedies. Therefore, they cannot get relief under the habeas corpus provision of the ICRA. Accordingly, we affirm the district court.
AFFIRMED