**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 16 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RONALD D. ALLEN, Jr.; et al., | No. 13-55552 |
| Plaintiffs - Appellants, | D.C. No. 3:12-cv-01668-WQH-KSC |
| v. | |
| ROBERT H. SMITH; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted March 6, 2015
Pasadena, California

Before: REINHARDT, N.R. SMITH, and HURWITZ, Circuit Judges.

Ronald D. Allen and twenty-six other former members of the Pala Band of Mission Indians ("Appellants") appeal the district court's order dismissing this case for want for subject matter jurisdiction. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1.  "Ordinarily, federal courts lack jurisdiction to consider an appeal from the decision of an Indian Tribe to disenroll one of its members." *Jeffredo v. Macarro*, 599 F.3d 913, 917 (9th Cir. 2010).  "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72 n.32 (1978).  Understanding this precedent, Appellants did not challenge the Pala Band of Mission Indians' (the "Tribe's") disenrollment decision directly, but instead filed suit against present and former members of the Tribe's Executive Committee ("Appellees") in their individual capacities, asserting violations of various federal statutes and common law principles.  Appellants' prayer for relief included (1) "a declaratory judgment that the [Appellees'] improper disenrollment of [Appellants] constitutes violations of their civil rights"; (2) "a permanent injunction to invalidate [Appellees'] wrongful disenrollment actions"; (3) "an order declaring the wrongful disenrollment of [Appellants] by [Appellees] to be null and void;" (4) "an order requiring [Appellees] to pay back the money and lost benefits that were withheld and/or taken away from [Appellants] while they were wrongfully disenrolled"; (5) "an order for compensatory damages against the [Appellees] for violations of [Appellants'] rights in the amount appropriate to the proof adduced at trial"; and (6) "an order for

2

punitive damages against [Appellees] for causing, approving and/or ratifying the disenrollment of the [Appellants], and for consequential loss of money, property, and heritage."

"When [a] suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). "In any suit against tribal officers, we must be sensitive to whether the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the sovereign from acting, or to compel it to act." *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013) (internal quotation marks and alteration omitted). This relief sought by the Appellants clearly operates against the Tribe. The requested relief would prevent the Tribe from disenrolling the Appellants and compel it to reinstate their membership and tribal benefits. Even the request for compensatory and punitive damages (to be paid by the Appellees, not the Tribe) would interfere with the Tribe's public administration, because the monetary damages are predicated on this court's determination that the disenrollment of the

Appellants was improper. Thus, we conclude that Appellants' suit should be construed as a suit against the Tribe itself.

Appellants concede that the Tribe is protected from suit by its sovereign immunity. The Tribe's sovereign immunity also protects the named Appellees, because they were acting in their official capacity when they disenrolled the Appellants. *See Imperial Granite Co., v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991) ("The votes individually have no legal effect; it is the official action of the Band, following the votes, that caused [the] alleged injury."), *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949).

Appellants also assert that the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), allows them to seek injunctive relief against the Appellees. However, *Ex Parte Young* applies only to violations of federal law. *See Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012). On appeal, Appellants argue a violation of federal law only on the basis that Appellees were collaterally estopped from making a membership decision that runs contrary to the Department of Interior's 1989 administrative decision. Even assuming that the preclusive effect of an agency decision qualifies as federal law under *Ex Parte Young*, Appellants' briefing does not demonstrate why the 1989 decision has

4

preclusive effect against the Appellees. *See Syverson v. Int'l Bus. Machines Corp*, 472 F.3d 1072, 1078 (9th Cir. 2006).

2.  Appellants argue that they should have been granted leave to amend their complaint. "A district court does not err in denying leave to amend where the amendment would be futile." *Saul v. United States,* 928 F.2d 829, 843 (9th Cir. 1991). Even if the court allowed Appellants to drop the request for injunctive relief from their Complaint, the pleading would still require a federal court to evaluate whether the Tribe's disenrollment was proper. Thus, "it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

**AFFIRMED.**