947 F.2d 442
 Terry Gilbert SMITH, Plaintiff-Appellant,
v.
Charles MOFFETT, William Lutz, Robert J. Gorence, Dick
Felter, Milton Byron Walke, Michael Upshaw, Daryl Junes,
William Kellogg, Bobby Etsitty, Kenneth P. Shirley, Joe
Cambridge, Brenda Harrison, Sampson Cowboy, Gerald Kelly,
Reginald Deale, and Leonard Hilt, Defendants-Appellees.
 No. 90-2171.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 16, 1991.
 
 Terry Gilbert Smith, on the brief, pro se.
 Marilyn S. Page, Asst. U.S. Atty., on the brief, for defendants-appellees Charles Moffett, William L. Lutz, Robert J. Gorence, Dick Felter, and Milton Byron Walke.
 James Jay Mason, Mason, Rosebrough & Isaacson, P.A., Gallup, N.M., on the brief, for defendants-appellees Michael Upshaw, Daryl Junes, William Kellogg, Bobby Etsitty, Kenneth P. Shirley, Joe Cambridge, Brenda Harrison, Sampson Cowboy, and Leonard Hilt.
 Before ANDERSON, TACHA, and BRORBY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 In his pro se complaint, plaintiff-appellant Terry Smith alleged various violations of his civil rights by the defendants in his arrest, indictment, prosecution, and conviction.[1] Defendants are federal officials, tribal officials, or private individuals. Smith invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). The district court refused Smith's motion for continuance, refused to permit discovery or appoint counsel for Smith, and granted defendants' motions to dismiss.[2] Smith appeals all these rulings. We vacate and remand because the record fails to disclose whether Smith exhausted his tribal remedies.
 
 
 2
 Smith was arrested, tried, and convicted of assault with intent to commit bodily harm, and we upheld his conviction on appeal. United States v. Smith, No. 88-2737, slip op. at 5 (10th Cir. April 10, 1990). Smith filed this civil action pro se seeking redress for the allegedly unconstitutional actions of the defendants-appellees in effecting his conviction. It appears from the record that Smith is a Navajo Indian and the events underlying Smith's claims occurred almost exclusively on a Navajo reservation. Although some of the events allegedly occurred in connection with Smith's trial and may have been off-reservation, the few claims relying on events at trial would be barred by prosecutorial, judicial, and witness immunities in federal court. Because the claims not necessarily barred by these immunities may have arisen on the reservation, it appears Smith's complaint may well be within the civil jurisdiction of a Navajo tribal court.
 
 
 3
 Congress has enunciated a strong interest in promoting tribal sovereignty, including the development of tribal courts. Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14-15, 107 S.Ct. 971, 975-76, 94 L.Ed.2d 10 (1987). In deference to this interest, the federal courts have acknowledged the need to allow tribal courts to make an initial determination of tribal jurisdiction over matters arising on Indian reservations. In Iowa Mutual the Supreme Court reviewed a case in which an employee of a ranch located on an Indian reservation had brought a claim in tribal court against the ranch owner for injuries he suffered at work and against the ranch's insurer for bad faith refusal to settle the personal injury claim. The tribal court denied the insurance company's motion seeking dismissal based on lack of subject matter jurisdiction in the tribal court action. Without appealing this jurisdictional ruling to the tribal appellate court, the insurance company sought declaratory relief in the federal district court. The district court dismissed the insurance company's complaint, concluding it lacked subject matter jurisdiction over the claim because the insurance company had not exhausted tribal remedies. The Ninth Circuit affirmed.
 
 
 4
 In affirming the Ninth Circuit, the Supreme Court cited "the Federal Government's longstanding policy of encouraging tribal self-government," and noted that "[t]ribal courts play a vital role in tribal self-government." Id. at 14, 107 S.Ct. at 975. The Court restated its earlier observation in National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) that "A federal court's exercise of jurisdiction over matters relating to reservation affairs can ... impair the authority of tribal courts." Iowa Mutual, 480 U.S. at 15, 107 S.Ct. at 975. The Court held that the district court was correct in dismissing the declaratory judgment action but that the proper basis for the dismissal was comity, not a lack of subject matter jurisdiction. Id. at 19-20, 107 S.Ct. at 978-979.
 
 
 5
 We believe the comity concerns expressed in National Farmers and Iowa Mutual are also present in the instant case. The fact that some of the parties in Smith's case are non-Indians is immaterial to this analysis. Both Iowa Mutual and National Farmers involved non-Indian parties. The Iowa Mutual Court held "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." Id. at 18, 107 S.Ct. at 977 (citations omitted); see also National Farmers Union, 471 U.S. at 854-55, 105 S.Ct. at 2542-43.
 
 
 6
 Jurisdiction presumptively lies in the tribal court, therefore, unless Congress has expressly limited that jurisdiction. The Iowa Mutual Court found no indication of congressional intent to limit tribal court jurisdiction in the diversity jurisdiction statute. Iowa Mutual, 480 U.S. at 17, 107 S.Ct. at 977. Nor did the Court find such intent in the federal question statute at issue in National Farmers Union. Iowa Mutual, 480 U.S. at 17, 107 S.Ct. at 977; see also id. at 16, 107 S.Ct. at 976 (quoting National Farmers Union, 471 U.S. at 857, 105 S.Ct. at 2454) ("Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.' "). Similarly, we find no congressional intent to limit Indian jurisdiction in 28 U.S.C. § 1343.
 
 
 7
 The fact that Smith apparently has not yet presented his case to a tribal court does not diminish the comity considerations present in this case. Lower courts have held comity to be a concern even when a case filed in federal court has not yet been filed in tribal court. United States v. Turtle Mountain Housing Auth., 816 F.2d 1273, 1276 (8th Cir.1987); see also, e.g., Brown v. Washoe Housing Auth., 835 F.2d 1327 (10th Cir.1988); Wellman v. Chevron U.S.A., Inc., 815 F.2d 577 (9th Cir.1987).
 
 
 8
 The parties have not raised this issue, and, because concerns of comity do not present a jurisdictional bar, Iowa Mutual, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8; Naranjo v. Ricketts, 696 F.2d 83, 86 (10th Cir.1982), we are not required to investigate them sua sponte. Nevertheless, we have discretion to raise comity issues sua sponte. See, e.g., Thomas v. Indiana, 910 F.2d 1413, 1415 (7th Cir.1990) ("[D]elicate questions of comity can be raised on the court's own initiative."); Brown v. Fauver, 819 F.2d 395, 398 (3d Cir.1987) (not inappropriate for court to raise nonexhaustion issue sua sponte); Pittsburgh & Midway Coal Mining Co. v. Yazzie, 909 F.2d 1387, 1422 (10th Cir.1990) (declining to address issue sua sponte but not indicating court lacked discretion to do so).
 
 
 9
 As in cases raising comity concerns regarding federal-state jurisdiction, comity concerns in federal-tribal civil jurisdiction arise out of mutual respect between sovereigns. In the realm of federal-tribal jurisdiction, however, Congress has expressed an additional interest in promoting the development of tribal sovereignty. The Supreme Court has recognized this congressional intent and assiduously advocated federal abstention in favor of tribal courts. See Iowa Mutual, 480 U.S. 9, 107 S.Ct. 971; National Farmers, 471 U.S. 845, 105 S.Ct. 2447.
 
 
 10
 In Granberry v. Greer, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), a habeas corpus case not involving questions of tribal jurisdiction, the Court addressed the question "whether the State's failure to raise nonexhaustion in the district court constitutes a waiver of that defense in the court of appeals." Id. at 130, 107 S.Ct. at 1673. In outlining a range of theoretical responses to which appellate courts might resort when confronted with this issue, the Court cited Iowa Mutual and National Farmers as examples of the extreme end of the spectrum, characterizing these cases as establishing "an inflexible bar to consideration of the merits of the petition by the federal court, and therefore requir[ing] that a petition be dismissed when it appears that there has been a failure to exhaust." Id. at 131 & n. 4, 107 S.Ct. at 1674 & n. 4.
 
 
 11
 We recognize this dictum does not establish comity as a jurisdictional bar, but it does indicate the heightened sensitivity to tribal sovereignty present in federal-tribal comity cases. Thus, we do not view the requirement of exhaustion of tribal remedies as a mere defense to be raised or waived by the parties. Cf. United States v. Woods, 888 F.2d 653, 654 (10th Cir.1989) (state can waive defense of failure to exhaust state remedies in habeas case). The congressional concern with promoting tribal sovereignty adds another dimension to federal-tribal comity, and we consider this concern sufficiently important to warrant our notice in this case.
 
 
 12
 We distinguish our decision in Pittsburgh & Midway Coal Mining Co. v. Yazzie, 909 F.2d 1387 (10th Cir.1990). In Yazzie, we declined to raise the federal-tribal comity issue sua sponte on appeal when the district court's ruling on the issue had not been appealed. 909 F.2d at 1422. The underlying claim in that case was a dispute over the boundaries of an Indian reservation. Yazzie presented very different considerations than are involved in cases such as Iowa Mutual, National Farmers, and the instant case. A boundary dispute typically involves non-Indian landowners in a dispute over potentially non-Indian territory. Taxation concerns and other matters ranging far beyond the subject matter of a civil suit arising within the reservations boundaries are implicated in a reservation boundary suit. Indeed, in Yazzie we distinguished Iowa Mutual and National Farmers because those cases involved intra-reservation disputes rather than reservation boundary disputes. Yazzie, 909 F.2d at 1422.
 
 
 13
 Upon remand the district court is directed to determine whether Smith's claims arose on the reservation and whether they have been presented to the appropriate tribal court. We VACATE and REMAND for the district court to resolve, in a manner consistent with this opinion, whether comity requires that a Navajo tribal court first have an opportunity to determine its jurisdiction over Smith's complaint. The mandate shall issue forthwith.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The record does not reveal any filings by the two private individual defendants, Deale and Kelly. Thus, the judge's dismissal of claims against these defendants was apparently sua sponte