**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Cyril PLAINBULL; Arvilla Plainbull,**
**Defendants–Appellees.**

No. 91–35224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1992.

Decided Feb. 26, 1992.

Blake A. Watson, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for plaintiff-appellant.

D. Michael Eakin, Montana Legal Services Associates, Billings, Mont., for defendants-appellees.

Before HUG, NOONAN, and THOMPSON, Circuit Judges.

HUG, Circuit Judge:

Cyril and Arvilla Plainbull, enrolled members of the Crow Tribe, reside on allotted lands located on the western side of the Crow Reservation near Pryor, Montana. Situated next to the Plainbulls' allotments are reservation lands held in trust by the United States for the Crow Tribe, which are used as tribal range units for grazing livestock. The Plainbulls have, for many years, grazed livestock on the tribal range units without a valid grazing permit and without paying grazing fees.

After several years of documented trespass by the Plainbulls' livestock on tribal lands, the Bureau of Indian Affairs in 1987 and 1988 billed the Plainbulls for trespass penalties pursuant to 25 U.S.C. § 179, and for the value of consumed forage pursuant to 25 C.F.R. § 166.24. 25 U.S.C. § 179 provides that:

> Every person who drives or otherwise conveys any stock of horses, mules, or cattle, to range and feed on any land belonging to any Indian or Indian tribe, without the consent of such tribe, is liable to a penalty of $1 for each animal of such stock. This section shall not apply to Creek lands.

25 U.S.C. § 179 (1988). Because the Plainbulls refused to comply with orders to pay annual grazing fees and to desist in trespassing, the United States brought this action in its own right and on behalf of the Crow Tribe.

The record contains no evidence of the Tribe's concurrence in this lawsuit, but the United States was nonetheless authorized to file by 25 U.S.C. § 201. 25 U.S.C. § 201 provides as follows:

> All penalties which shall accrue under title 28 of the Revised Statutes shall be sued for and recovered in an action in the nature of an action of debt, in the name of the United States, before any court having jurisdiction of the same, in any State or Territory in which the defendant shall be arrested or found....

25 U.S.C. § 201 (1988). Although the United States was authorized to bring this action, the district court found this case appropriate for abstention and granted the Plainbulls' motion to dismiss out of comity considerations. In its order granting the Plainbulls' Motion to Dismiss, the court held that "this case essentially involves the enforcement of a tribal resolution against a tribal member, [and consequently] appears to be an internal tribal matter which ought to be resolved in the tribal court system."

A dismissal on abstention grounds is reviewed for abuse of discretion. *Stock West Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1229 (9th Cir.1989); *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 819 (9th Cir.), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). Under the abuse of discretion standard, a reviewing court will not reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors. *Abatti v. Commissioner*, 859 F.2d 115, 117 (9th Cir.1988); *Nilsson, Robbins v. Louisiana Hydrolec*, 854 F.2d 1538, 1546 (9th Cir.1988). A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *Hunt v. National Broadcasting Co., Inc.*, 872 F.2d 289, 292 (9th Cir.1989).

Although the district court perceived this action to be an internal tribal matter, the Government correctly points out that it is also a federal case. Barring other considerations, the federal government, attempting to enforce federal legislation, may bring an action in federal court.

Since the Government is attempting to enforce the penalty provisions incident to 25 U.S.C. § 179 (1988), a federal law, the district court had jurisdiction to hear this case. In fact, the district court had jurisdiction to hear this case under 28 U.S.C. § 1331 (1988), which confers federal question jurisdiction; 28 U.S.C. § 1345 (1988), which confers jurisdiction when the United States is a plaintiff; and 28 U.S.C. § 1355 (1988), under which the Government filed this suit.

The district court's decision to abstain raises two issues that we must address. First, we must determine whether 28 U.S.C. § 1355 confers exclusive jurisdiction to the federal courts in the instant case, and second, we must determine whether the district court abused its discretion by electing to abstain. If either question must be answered in the affirmative, we will be compelled to reverse for abuse of discretion.

■ Whether section 1355 limits cases filed under the authority of 25 U.S.C. § 201 to federal courts is unclear. The issue has never been addressed by this court, and we find no binding precedent to guide us. The only case we have found that addresses the exclusive jurisdiction issue is *United States ex rel. Chase v. Wald*, 557 F.2d 157, 159 (8th Cir.), *cert. denied*, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977). That case, however, does not stand for the proposition that 28 U.S.C. § 1355 confers exclusive jurisdiction over 25 U.S.C. § 201 cases to the federal courts. Only two sentences in that entire opinion discuss the issue. First, in the fact summary, the court says that "28 U.S.C. § 1355 gives the federal courts exclusive jurisdiction of all actions brought to recover penalties imposed by the law of the United States." *Chase*, 557 F.2d at 159. This sentence, however, cannot fairly be read as addressing the issue at hand. Rather, we think the court was merely paraphrasing section 1355 instead of ruling on the breadth of its application. Consequently, we are not persuaded that this first reference to section 1355 should affect our analysis in this case.

The second reference to section 1355 in *Chase* appears in the first sentence of the court's discussion. The court wrote the following: "To the extent that plaintiff sought to recover a statutory penalty under 25 U.S.C. § 179 it is clear that the district court had jurisdiction under 25 U.S.C. § 201 and 28 U.S.C. § 1355." *Id.* at 160. We agree with the Eighth Circuit here. Although considerations of comity may require a district court to abstain from hearing a case over which it has jurisdiction, we recognize that section 1355 does grant the district courts original jurisdiction to hear cases filed under 25 U.S.C. § 201. Since neither reference to section 1355 in *Chase* actually addresses the issue of whether section 1355 limits cases filed under 25 U.S.C. § 201 to federal courts, we must look elsewhere for guidance to resolve this question.

■ A careful reading of 28 U.S.C. § 1355 leads us to the conclusion that it does not limit jurisdiction in cases filed under 25 U.S.C. § 201 to federal courts. 28 U.S.C. § 1355 reads as follows:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

Applying this section to the instant case, we agree with both the Government and the Eighth Circuit that the district court had original jurisdiction to hear this dispute. However, we read the plain language of section 1355 as suggesting that the district court was not obligated to hear the case. Section 1355 only grants the district court original jurisdiction "exclusive of the courts of the States," not exclusive of all other courts that would otherwise have had jurisdiction. Since a tribal court is not a state court, we hold that it does not fall within the exclusive jurisdiction provision of section 1355.

Indian nations and the federal government are dual sovereigns. "Indian tribes

still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978); *see also Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). "[T]ribal sovereignty furnishes the backdrop against which all federal Indian laws are to be read." F. Cohen, Handbook of Federal Indian Law 232 (1982 ed.); *see, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71, 98 S.Ct. 1670, 1683, 56 L.Ed.2d 106 (1978); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172–73, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973). Although Congress has plenary power to define the jurisdiction of tribal courts, *see Escondido Mut. Water Co. v. La Jolla, et al. Bands of Mission Indians*, 466 U.S. 765, 788 n. 30, 104 S.Ct. 2105, 2118 n. 30, 80 L.Ed.2d 753 (1984); *Rice v. Rehner*, 463 U.S. 713, 719, 103 S.Ct. 3291, 3295, 77 L.Ed.2d 961 (1983); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980), it did not exercise that power, when it drafted section 1355, to preclude concurrent jurisdiction in the tribal court.

■ Since section 1355 does not give the federal courts exclusive jurisdiction over this case, the district court did not make the jurisdictional error that the Government alleges. If it had, that error would have automatically constituted an abuse of discretion and would have ended our inquiry. Since no such error was made, however, we must now determine whether the district court abused its discretion by dismissing, out of concerns for comity, a case over which it had jurisdiction. The Supreme Court has stated that the doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Upon careful consideration of the judicial policy of encouraging tribal self-government, however, we hold that abstention, in this case, was appropriate. The district court did not

abuse its discretion by deferring to the tribal courts for resolution of this dispute.

■ The Supreme Court has repeatedly recognized a federal policy favoring the promotion of tribal self-government. *See, e.g., Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987); *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 890, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986); *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 138 n. 5, 102 S.Ct. 894, 902 n. 5, 71 L.Ed.2d 21 (1982). This policy has been firmly entrenched in the law of this circuit. *See, e.g., Wellman v. Chevron U.S.A., Inc.*, 815 F.2d 577, 578 (9th Cir.1987); *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1415 (9th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir.1985) (as amended); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1322 (9th Cir.1983), *cert. denied*, 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984). A tribal court presumptively has jurisdiction over activities that take place on tribal land. *Wellman*, 815 F.2d at 578.

■ The deference that both state and federal courts must afford tribal courts concerning activities occurring on reservation land is deeply rooted in Supreme Court precedent. The Court has recognized that tribal courts are appropriate forums for the exclusive adjudication of disputes over transactions taking place within the boundaries of a reservation. *Santa Clara Pueblo*, 436 U.S. at 65, 98 S.Ct. at 1680–81. For example, in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), the Court ruled that a state court did not have jurisdiction to hear a case brought by a non-Indian against an Indian arising out of a transaction that took place on reservation land. *Id.* at 223, 79 S.Ct. at 272. Similarly, federal courts should also decline to exercise jurisdiction over transactions occurring within a reservation. "Although the crimi-

nal jurisdiction of the tribal courts is subject to substantial federal limitation, *see Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), their civil jurisdiction is not similarly restricted." *Iowa Mutual*, 480 U.S. at 15, 107 S.Ct. at 976.

In *Iowa Mutual*, the Supreme Court recognized that both state courts and federal courts would undermine the ability of tribes to govern themselves by exercising jurisdiction over activities taking place on tribal lands. 480 U.S. at 15, 107 S.Ct. at 976. Deference to tribal courts with regard to tribal affairs is a fundamental tenet of federal jurisprudence. The Court in *Iowa Mutual* stated that:

> Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court "a full opportunity to determine its own jurisdiction." ... In diversity cases, as well as federal-question cases, unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs.

*Id.* at 16, 107 S.Ct. at 976, *citing National Farmers Union*, 471 U.S. at 857, 105 S.Ct. at 2454; *Santa Clara Pueblo*, 436 U.S. at 59, 98 S.Ct. at 1677.

█ The principle of judicial self-restraint regarding activities occurring inside reservation boundaries is repeated over and over in Supreme Court cases. In *National Farmers Union*, the Court said the following:

> We believe that examination [whether tribal courts have jurisdiction] should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination.... Moreover, the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed.... Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*National Farmers Union*, 471 U.S. at 856–57, 105 S.Ct. at 2454. Because the Plainbulls grazed their cattle on tribal land without obtaining a tribal permit, the Government should have filed in tribal court. The fact that the Government is attempting to enforce federal law is immaterial. The alleged trespass was to tribal land and considerations of comity require that the tribal courts get the first opportunity to resolve this case.

█ The Government also suggests that the district court abused its discretion by abstaining from the merits of this case because there was no concurrent action pending in the tribal courts. Whether a tribal action is pending, however, does not determine whether abstention is appropriate. In *Wellman*, we held that abstention in that case was required even in the absence of a pending tribal court action. 815 F.2d at 579. Our holding in *Wellman*, that considerations of comity require the exhaustion of tribal remedies, applies with even more force to the instant case. Despite the fact that the federal government is seeking to enforce a federal law, a tribal member is nonetheless accused of grazing cattle on tribal land without tribal permission.

The principles discussed above suggest that the district court's decision to abstain in the instant case was not only within that court's discretion, but that it was the most appropriate action. However, since we must only determine whether the district court committed a clear error of judgment in reaching its conclusion, *Abatti v. Commissioner*, 859 F.2d at 117, our inquiry ends with the determination that it did not.

AFFIRMED.