Opinion by Judge N.R. Smith; Dissent by Judge Kozinski.
OPINION
N.R. SMITH, Circuit Judge;
A petitioner’s failure to exhaust a claim brought under the Indian Civil Rights Act (the “ICRA”), 25 U.S.C. § 1303, does not deprive the federal court of subject matter jurisdiction. Iowa Mid. Ins. Co. v. LaPlante, 480 U.S. 9, 16 n. 8, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); Grand Canyon Skywalk Dev., LLC v. ‘Sa’ Nyu Wa Inc., 715 F.3d 1196, 1200 (9th Cir.2013); Selam v. Warm Springs Tribal Corr. Facility, 134 F.3d 948, 953 (9th Cir.1998). Nevertheless, exhaustion under the *1013 ICRA is a “prerequisite to a federal court’s exercise of its jurisdiction.” Grand Canyon, 715 F.3d at 1200. Accordingly, we will not address a petitioner’s unex-hausted claims, unless the petitioner shows that one of the doctrine’s narrow exceptions applies. Jeffredo v. Macarro, 599 F.3d 913, 918 (9th Cir.2010); see also Selam, 134 F.3d at 954,
At the outset, we note that “Indian tribes occupy a unique status under our law.” Nat'l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 851, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). They “are not bound by the United States Constitution in the exercise of their powers, including their judicial powers.” Means v. Navajo Nation, 432 F.3d 924, 930 (9th Cir.2005). As a result, “tribal proceedings do not afford criminal defendants the same protections as do federal proceedings.” United States v. Percy, 250 F.3d 720, 725 (9th Cir.2001). Although the ICRA grants many rights to tribe members, some of what we would consider our most basic rights are noticeably absent. See, e.g., id. (Sixth Amendment right to counsel).
Habeas corpus provides the exclusive remedy by which enforcement of the ICRA can be obtained in federal court. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 66, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Even when we might exercise jurisdiction in the habeas context, the “Supreme Court specifically has instructed us to require exhaustion of tribal appellate court remedies ... because the federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts.” Selam, 134 F.3d at 953 (internal quotation marks omitted). At times, these considerations constrain our ability to grant a petitioner relief, even when his unexhausted claim may be meritorious in other contexts.
In the instant case, Fortino Alvarez failed to exhaust his ICRA claims by bringing them first to the tribal courts. Alvarez has not demonstrated that an exception to the exhaustion doctrine applies. Thus, we decline to exercise jurisdiction over Ms claims and affirm the district court’s denial of his habeas petition.
FACTS
Alvarez is an enrolled member of the Gila River Indian Community (the “Community”). In 2003, the Community charged Alvarez with assault, domestic violence, and misconduct involving a weapon (the “Charges”) after Alvarez allegedly assaulted his girlfriend with a flashlight. The Community’s tribal court arraigned Alvarez on the Charges during a group arraignment on July 3,2003.
Prior to the arraignment, Alvarez received a copy of the Community’s criminal complaint with an attached “Defendant’s Rights” form. The Defendant’s Rights form included, among others, the statement: “You have the right to appeal, if you are found ‘Guilty*, within a period of five (5) business days after sentencing.”[1] This statement was consistent with the right to appeal provided by the Gila River Indian Community Code.[2] The Community *1014 court also read the form at the beginning of the group arraignment. Thereafter, the court asked Alvarez individually whether he had any questions about those rights. He responded that he did not.
The Community court convicted Alvarez of the Charges after a bench trial in late-2003. The court sentenced Alvarez to one year of imprisonment for each of the five Charges. The court also determined that Alvarez should serve the five years consecutively with other time for separate crimes for which Alvarez was convicted—bringing his total prison term to nine years.
Alvarez did not appeal his conviction or sentences. At some point, Alvarez filed a motion for commutation of his sentence. Although Alvarez failed to raise any ICRA claims in the motion for commutation, it is unclear whether tribal procedure allowed him to assert such grounds. In any event, the Community court denied the motion for commutation, because Alvarez’s disciplinary infractions in prison made him ineligible for commutation.
In 2008, Alvarez filed a pro se habeas corpus petition (the “Petition”) under 25 U.S.C. § 1303, challenging his convictions and sentences. Alvarez raised a number of alleged ICRA violations.[3] The Community moved to dismiss the Petition, arguing that Alvarez failed to exhaust his tribal remedies. The Community argued that Alvarez should have brought: (1) a motion to commute that included the ICRA claims raised in the Petition; (2) a petition for writ of habeas corpus to the Community; or (3) “a motion to correct his sentence.” Both the assigned magistrate judge and the district court rejected the Community’s exhaustion arguments and found that, even if a motion to commute were an available remedy, further attempts to exhaust through a second motion to commute would have been futile. The district court also concluded that the Community failed to show that tribal procedure allowed for a writ of habeas corpus or a “motion to correct” Alvarez’s sentence. Neither the parties nor the lower court discussed Alvarez’s failure to file a direct appeal as bearing on the exhaustion issue.
The magistrate judge recommended that the district court dismiss all of Alvarez’s claims on their merits. The district court adopted the recommendation. Alvarez timely appealed, challenging the dismissal of his Confrontation Clause and right to jury trial claims.
DISCUSSION
We “review de novo a district court’s denial of a petition for writ of habe-as corpus under the ICRA.” Jeffredo, 599 F.3d at 917.
I.
“ ‘[A] federal court’s exercise of jurisdiction over matters relating to reservation affairs can ... impair the authority of tribal courts.’ ” Selam, 134 F.3d at 953 (quoting Iowa Mut., 480 U.S. at 15, 107 S.Ct. 971) (second alteration in original). As such, “ ‘[t]he Supreme Court’s policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims.’ ” *1015 Jeffredo, 599 F.3d at 918 (quoting Selam, 134 F.3d at 953). Thus, “the court is required to ‘stay its hand’ until [a] party has exhausted all available tribal remedies.” Id,
A party’s failure to exhaust, however, does not deprive the federal courts of subject matter jurisdiction over the claims. See Iowa Mut., 480 U.S. at 16 n. 8, 107 S.Ct. 971. Two Supreme Court cases— National Farmers and Iowa Mutual—illuminate the nature of our exhaustion requirement and its exceptions. In National Farmers, the Supreme Court applied the exhaustion doctrine in a federal case brought by non-Indians against Indians in federal court. See 471 U.S. at 855-57, 105 S.Ct. 2447. The non-Indian plaintiffs sought to enjoin execution of a tribal court judgment against their property. Id. at 848, 105 S.Ct. 2447. The district court entered the injunction, concluding that the tribal court did not have jurisdiction over non-Indians’ property. Id. at 848-49, 105 S.Ct. 2447. The Supreme Court concluded that the federal district court improperly entered the injunction, because the non-Indian plaintiffs had not raised the challenge to the tribal court’s jurisdiction to the tribal court in the first instance. Id. at 856-57, 105 S.Ct. 2447. The Court reasoned that “Congress is committed to a policy of supporting tribal self-government and self-determination.” Id. at 856, 105 S.Ct. 2447. Such policy favors allowing tribal courts “the first opportunity to evaluate the factual and legal bases for the challenge” to the tribal court’s jurisdiction. Id,
In Iowa Mutual, an insurance company challenged the tribal court’s jurisdiction to decide a tort case against one of the company’s policyholders. 480 U.S. at 12, 107 S.Ct, 971. The tribal court held that it had jurisdiction over the claims against the non-Indian company. Id. The company did not appeal to the tribe’s court of appeals, but filed suit in federal court. Id, at 12-13, 107 S.Ct. 971. The district court dismissed due to the company’s failure to fully exhaust its jurisdictional challenge. The district court held that it lacked subject matter jurisdiction over the suit. Id. at 13, 107 S.Ct. 971. Our court affirmed. Id.
The Supreme Court agreed that the district court properly dismissed the company’s suit for failure to exhaust. Id. at 19-20, 107 S.Ct. 971. However, the Court disagreed that failure to exhaust deprived the federal courts of subject matter jurisdiction. See id. at 16 n. 8, 107 S.Ct. 971 (“[T]he exhaustion rule enunciated in National Farmers Union did not deprive the federal courts of subject-matter jurisdiction.”). The Court concluded:
[T]he [exhaustion] rule is analogous to principles of abstention articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976): even where there is concurrent jurisdiction in both the state and federal courts, deference to state proceedings renders it appropriate for the federal courts to decline jurisdiction in certain circumstances. In Colorado River, as here, strong federal policy concerns favored resolution in the non federal forum.
Id. at 16 n. 8, 107 S.Ct. 971. Accordingly, the Court applied the National Farmers exhaustion rule and “stayfed] its hand in order to give the tribal court a Ml opportunity to determine its own jurisdiction.” Id. at 16, 107 S.Ct. 971 (internal quotation marks omitted). The Court noted some exceptions, enumerated in National Farmers, to the exhaustion rule, but rejected the company’s argument that an exception applied. Id. at 18-19, 107 S.Ct. 971. The Court remanded the case for the district court to determine whether to stay the *1016 case pending further tribal proceedings or dismiss it outright. Id. at 20 n. 14, 107 S.Ct. 971.
Since National Farmers and Iowa Mutual, we have applied the exhaustion rule and required parties to bring challenges to tribal court jurisdiction to the tribal courts before bringing the challenge to federal court. See, e.g., Grand Canyon, 715 F.3d at 1200-01; Burlington N. R.R. Co. v. Crow Tribal Council, 940 F.2d 1239, 1247 (9th Cir.1991). In doing so, we have observed that, even though exhaustion is not a “jurisdictional prerequisite,” Iowa Mut., 480 U.S. at 16 n. 8, 107 S.Ct. 971, exhaustion is “a prerequisite to a federal court’s exercise of its jurisdiction,” Grand Canyon, 715 F.3d at 1200 (emphasis added). We have also noted that some exceptions to the rule may apply under certain circumstances. Id.
Aside from the tribal court jurisdiction issue, we have also relied on National Farmers and Iowa Mutual to define the scope of the exhaustion rule in the ICRA/habeas context. See Jeffredo, 599 F.3d at 918; Selam, 134 F.3d at 953. In keeping with National Farmers, we have observed “that exhaustion of [ICRA] claims is not an inflexible requirement.” Selam, 134 F.3d at 953 (internal quotation marks omitted). We recognize that:
A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights. Thus this Court must determine whether exhaustion is appropriate in the case at bar.
Id. In light of the strong presumption against “assuming jurisdiction over unex-hausted claims” in the tribal context, the balance will shift in favor of not requiring exhaustion only if one of the limited exceptions to the exhaustion doctrine applies, or if the petitioner can show that the unex-hausted tribal procedure is not consistent with the ICRA. See id. at 953-54.
We have recognized that some of the exhaustion exceptions announced in National Farmers may apply in the habeas context to excuse a petitioner’s failure to exhaust. Id. at 954. We have not required exhaustion where “the litigant was able to show either that [ (1) ] exhaustion would have been futile or that [ (2) ] the tribal court of appeals offered no adequate remedy.” Id.
In Selam, we applied the exhaustion doctrine in a case very similar to Alvarez’s. There, the petitioner brought a number of ICRA claims to the district court, but had previously failed to bring one of them to the tribal court of appeals. Id. at 953. As a result, the district court (on the magistrate judge’s recommendation) refused to hear the claim. Id. We affirmed. Id. at 954. We noted the strong comity and efficiency concerns underlying the exhaustion doctrine and the need to balance those concerns against the petitioner’s individual rights. Id. at 953. We declined to “assume jurisdiction” over the petitioner’s unex-hausted claim and reasoned that the petitioner was a member of the tribe, convicted for crimes committed on the reservation against other Indians. Id. We observed that a tribe’s right to self-government “includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanctions.” Id, at 953-54. As such, a member Indian “is bound to follow the procedures of the tribe if they are consistent with the [ICRA].” Id. at 954 (emphasis omitted). We concluded that the tribe’s appellate procedures were consistent with the ICRA, because the tribe had twice informed the petitioner of his right to appeal. Id. We rejected the petitioner’s argument that exhaustion would *1017 be futile or that the appellate process was inadequate, concluding that petitioner “demonstrated neither.”[4] Id.
Here, as in Selam, the interests of comity and efficiency convince us to decline to exercise jurisdiction over Alvarez’s claims. Like the petitioner in Selam, Alvarez is a Community member, convicted of acts committed on the reservation against other Community members. Accordingly, the Community’s right of self-government includes the right to enforce its laws against Alvarez. Alvarez, as a Community member, was required to follow Community procedure and bring an appeal within five days as prescribed by Gila River Indian Community Code § 2.1236. Alvarez does not dispute that the Defendant’s Rights form was attached to his criminal complaint and read to him at his arraignment. Nor does he dispute that he acknowledged that he understood the rights set forth in the form. Yet, he failed to comply with the five-day requirement. Further, Alvarez failed to bring Ms claims in Ms motion to commute his sentence. Although we acknowledge that a motion to commute might not have been the appropriate vehicle to raise IGRA claims, this fact only highlights Alvarez’s failure to bring the claims on direct appeal. As a result of this failure, the Community courts have never had an opportunity to hear Alvarez’s claims and “rectify any errors it may have made.” See Selam, 134 F.3d at 953.
Alvarez offers no explanation for his failure to exhaust by bringing his claims on direct appeal. As such, he has failed to demonstrate that direct appeal would have been futile or that the Community court of appeals would not have provided an adequate remedy.[5] Indeed, the record demonstrates that Community procedures allowed Alvarez to seek relief from his conviction and sentence,[6] Although the district court found that the futility exception applied to a motion to commute, *1018 which finding we review only for clear error, see Grand Canyon, 715 F.3d at 1200, it did not make a finding regarding the futility of Alvarez’s direct appeal. As such, there is no finding to which we owe deference on this point.
Further, Alvarez has failed to show that the Community’s appeals process is not consistent with the ICRA. The Community requires that people desiring to appeal their convictions do so within five days. Although this time period is short, the time-limit is not unreasonable, and the ICRA does not require anything more of the Community.[7] Thus, because Avarez has not demonstrated that an exhaustion exception applies or that the Community’s appeals process is inconsistent with the ICRA, Avarez has failed to overcome the strong presumption of requiring full exhaustion of tribal remedies. Therefore, we require full exhaustion in this case and are “persuad[ed] ... not to assume jurisdiction over” Avarez’s claims. See Selam, 134 F.3d at 953.
II.
Avarez argues that we should not apply the exhaustion doctrine, because the Community did not raise Avarez’s failure to appeal in its motion to dismiss for lack of exhaustion. According to Avarez, the Community waived the exhaustion defense, and our application of the doctrine would be an abuse of discretion under Wood v. Milyard, — U.S. —, 132 S.Ct. 1826, 1834, 182 L.Ed.2d 733 (2012). We reject Avarez’s arguments. Our application of the exhaustion rule is consistent with Wood. Further, comity and tribal self-government concerns warrant application of the doctrine, despite the Community’s failure to raise the direct appeal issue.
A Wood does not bar application of the exhaustion rule in this case.
Where a tribe fails to raise the exhaustion defense in response to a habeas petition, we may nevertheless consider the defense unless the tribe has “deliberatefly] waivefd]” it. See id. at 1834. A tribe deliberately waives the nonexhaustion defense when it strategically withholds it or intentionally chooses to relinquish it. Id. at 1833-35. For example, in Wood, the Supreme Court held that the court of appeals abused its discretion where it sua sponte raised the statute of limitations defense in a habeas case. Id. at 1834. The court reasoned that the state’s failure to raise the defense “did not stem from an ‘inadvertent error.’ ” Id. at 1835. Rather, “the State twice informed the District Court that it [would] not challenge” the petition’s timeliness. Id. at 1834. In doing so, the state “deliberately steered” the district court away from the statute of limitations issue and toward the merits of the petitioner’s claims. Id. at 1835.
In this case, our application of the exhaustion doctrine does not contravene Wood. With regard to Avarez’s failure to *1019 appeal, there is no indication in the record that the Community deliberately waived the exhaustion defense. Unlike the state in Wood, the Community challenged Alvarez’s nonexhausted petition by filing a motion to dismiss.[8] True, the petition did not address Alvarez’s failure to appeal, but this omission is quite different from the state’s “strategic! ] withhold[ing]” of the exhaustion defense in Wood, in which the state “deliberately steered” the district court away from the exhaustion issue.[9] Id. at 1834-35. And even though federal courts commonly infer waiver from the failure to raise an issue, Day, 547 U.S. at 202, 126 S.Ct. 1675, Wood instructs that the exhaustion doctrine “is founded on concerns broader than those of the parties; in particular, the doctrine fosters respectful, harmonious relations between the state and federal judiciaries.” 132 S.Ct. at 1833. For that reason, in exceptional cases, Wood permits federal courts to raise the exhaustion defense sua sponte unless it has been intentionally relinquished.[10] Id, at 1833, 1835. There is no evidence of such an intention here.
The dissent argues that finding the Community forfeited, rather than waived, the defense is not enough, because Alvarez never had a fair opportunity to respond to our theory of the case. See id. at 1833-34. *1020 The record tells a different story. As the dissent acknowledges, we issued an order prior to oral argument directing that “the parties should be prepared to address whether this court has jurisdiction over this appeal.” We specifically cited 25 U.S.C. § 1303 and Jeffredo v. Macarro, 599 F.3d 913, 918 (9th Cir.2010). Id. The only discussion of jurisdiction at that cite in Jeffredo establishes “that a litigant must first exhaust tribal remedies before properly bringing a petition for writ of habeas corpus.” 599 F.3d at 918. Alvarez responded by filing a supplemental brief, in which he argued that “to the extent exhaustion is a component of the district court’s subject-matter jurisdiction here, that requirement is satisfied.”
At oral argument, the court discussed Alvarez’s right to appeal with counsel for both parties. The Community argued that Alvarez had failed to exhaust his tribal remedies, because “the fact of the matter is he did not directly appeal his conviction.” Alvarez’s counsel responded by arguing, as the dissent argues, that the Community waived the argument that Alvarez failed to appeal. Alvarez argued (again much like the dissent) that, under the Supreme Court’s decision in Wood, the court could not raise failure to exhaust sua sponte, because it had been waived rather than forfeited. This series of events convinces us that Alvarez was “accorded a fair opportunity to present his position.” Wood, 132 S.Ct. at 1834; see also Day, 547 U.S. at 210-11, 126 S.Ct. 1675 (requiring only “notice and a fair opportunity” to argue in favor of waiver).
B. The interests of comity and tribal self government warrant application of the exhaustion rule.
Granberry v. Greer, 481 U.S. 129, 134-35, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), discussed in Wood, helps guide our discretion in determining whether to address the nonexhaustion issue. In Granberry, the Court rejected the petitioner’s argument that a state’s failure to raise the exhaustion defense barred the district court from raising it. Id. at 131-32, 107 S.Ct. 1671. The Court reiterated its view that “comity [is] the basis for the exhaustion doctrine.” Id. at 134, 107 S.Ct. 1671. Accordingly, in exceptional cases, courts may excuse the state’s duty to raise the exhaustion defense and “determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings..,” Id.
Our own precedent indicates that cases implicating tribal sovereignty and the tribal exhaustion requirement are exceptional. In Allstate Indemnity Corporation v. Stump, 191 F.3d 1071 (9th Cir.), amended 197 F.3d 1031 (9th Cir.1999), we recognized that, because tribal sovereignty is of critical importance, the tribal exhaustion requirement is appropriately addressed sua sponte. 191 F.3d at 1073 (citing United States v. Tsosie, 92 F.3d 1037,1041 (10th Cir.1996)). Indeed we have found the tribal exhaustion requirement of such import that we have enforced it even when it was not raised until after we had decided the case and issued an opinion. See Marceau v. Blackfeet Housing Authority, 540 F.3d 916, 920 (9th Cir.2008). Granberry itself implied that tribal exhaustion is exceptional and not subject to waiver. Though Granberry decided an issue pertaining to the exhaustion of state remedies, the Court briefly compared the state exhaustion requirement to the nature of tribal exhaustion. 481 U.S. at 130 & n. 4, 107 S.Ct. 1671. The comparison is revealing: the Court characterized the tribal exhaustion requirement as an “inflexible bar to consideration of the merits” that may not be waived. Id. Although the Court’s brief discussion of tribal exhaustion is dicta, we recognize, as do our sister circuits, that it *1021 demonstrates “the heightened sensitivity to tribal sovereignty present in federal-tribal comity cases.” Smith v. Moffett, 947 F.2d 442, 445 (10th Cir.1991) (emphasis added).[11] Requiring exhaustion of tribal remedies not only fosters mutual respect between sovereigns in a manner similar to abstention in favor of state courts, see Iowa Mut. Ins. Co., 480 U.S. at 16 n. 8, 107 S.Ct, 971, but also promotes tribal self-government through the development of the tribal court system. Id, at 16-17, 107 S.Ct. 971. Thus the tribal exhaustion doctrine implicates unique and “exceptional” concerns beyond those implicated in federal-state comity cases.[12]
Further, the Supreme Court recognized in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 71, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), that respect for tribal courts is particularly important when adjudicating ICRA claims, notwithstanding that the ICRA is a federal, not tribal, law.[13] Not only does adjudicating ICRA claims in federal court necessarily constitute an interference with tribal autonomy and self-government, 436 U.S. at 59, 98 S.Ct. 1670, but resolution of statutory issues under the ICRA will “frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts.” Id. at 71, 98 S.Ct. 1670. We recognize that the ICRA provides the mechanism of habeas corpus to correct abuses in the administration of criminal justice. Id, But, even when eval *1022 uating a habeas petition, we must be mindful of our obligation to avoid “intruding] needlessly on tribal self-government.” Id.
Here, our decision to decline to assume jurisdiction over Alvarez’s claims is consistent with the comity and self-government concerns underlying the tribal exhaustion doctrine generally and its application in the ICRA context specifically. If anything, the view of Congress and the Supreme Court toward tribal courts’ role in tribal self-government, discussed above, makes a stronger case for an exhaustion requirement than the federalism concerns discussed in Wood and Cranberry. Accordingly, we see no reason to allow Alvarez to bypass Community procedures and proceed to federal court in the first instance. See Selam, 134 F.3d at 953-54; cf. Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (explaining that, in the habeas context, one of the purposes of the exhaustion requirement is to ensure that “state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding”).
The nature of Alvarez’s claims strengthen our conclusion and further convince us that “comity and judicial efficiency ... make it appropriate for [us] to insist on complete exhaustion.” See Granberry, 481 U.S. at 135, 107 S.Ct. 1671. Alvarez brings his right to a jury trial claim under the ICRA, 25 U.S.C. § 1302(a)(10). Section 1302(a)(10) makes it unlawful for a tribe to “deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.” Alvarez acknowledges that the Community informed him of his right to a jury trial, but argues that it never told him that he had to request one. Thus, according to Alvarez, failure to request a jury trial did not constitute voluntary, knowing, and intelligent waiver of the right as required by the Constitution. See United States v. Duarte-Higareda, 113 F.3d 1000, 1002 (9th Cir.1997).
We have not previously had occasion to determine the scope of a defendant’s right to a jury trial under the ICRA. Federal Constitutional jurisprudence informs our interpretation of the ICRA where the rights are the same. See Randall v. Yakima Nation Tribal Court, 841 F.2d 897, 900 (9th Cir.1988). However, the rights afforded by the ICRA are not coterminous with the Constitution where the language and the history of the ICRA and the Constitution differ. See Santa Clara Pueblo, 436 U.S. at 62-63, 98 S.Ct. 1670; Randall v. Yakima Nation Tribal Court, 841 F.2d 897, 900 (9th Cir.1988) (explaining that when interpreting the ICRA’s due process clause, “courts ,.. [have] correctly sensed that Congress did not intend that the due process principles of the Constitution disrupt settled tribal customs and traditions.” (quoting F. Cohen, Handbook of Federal Indian Law, 670 (1982 ed.))); Tom v. Sutton, 533 F.2d 1101, 1103-04 (9th Cir.1976). Because the ICRA, by its plain language, requires a defendant to request a jury, it differs significantly from the Sixth Amendment right to a jury trial. See 25 U.S.C. § 1302(a)(10). As such, we cannot resolve Alvarez’s argument by consulting Sixth Amendment case law alone. Further, no federal court has determined whether a defendant can knowingly and voluntarily waive his right to a jury trial under the ICRA if the tribe never told the defendant that such a trial was available only “upon request.” As a result, Alvarez’s jury trial claim presents a significant and unresolved question of federal law.
If Alvarez had pursued his tribal remedies, it is possible that a tribal court would have granted relief, and we would not be here today. At least two other tribal *1023 courts have agreed with Alvarez’s argument that a tribe must inform a defendant of his right to a jury “upon request” to satisfy the knowing and intelligent requirement. See, e.g., McGrady v. Three Affiliated Tribes, 31 Indian L. Rep. 6058, 6058-59 (N. Plains Intertr. Ct.App.2004); Confederated Salish & Kootenai Tribes v. Peone, 16 Indian L. Rep. 6136, 6136-37 (C.S. & K. Tr. Ct.1989). Even if the Community courts did not grant Alvarez the relief he seeks, their full consideration of the issues and development of the record could have aided our decision and promoted the orderly administration of justice. See Nat’l Farmers, 471 U.S. at 856, 105 S.Ct. 2447 (explaining that the tribal court’s full development of the record would aid the federal court, even though the tribal court would be considering a question of federal law). Thus judicial efficiency considerations, as well as “our general duty to avoid deciding unnecessary issues,” Turner v. U.S. Parole Comm’n, 810 F.2d 612, 613 n. 3 (7th Cir.1987), counsel in favor of enforcing the exhaustion requirement here.
The dissent breathlessly accuses us of treating the parties “disparatefly].” How, the dissent asks, could we “forgive! ] the Community’s double-default but hold[ ] Alvarez strictly to his single oversight”? We too would be troubled—if this were not a gross oversimplification of the issues pre-seated in this case. The parties’ defaults were not created equal: Alvarez failed to exhaust; the Community inadvertently forfeited a defense. These doctrines are animated by wholly different rationales. Unlike forfeiture, exhaustion “implicates values beyond the concerns of the parties.” Wood, 132 S.Ct. at 1833.
The dissent ignores this distinction by citing non-habeas, non-exhaustion, non-Indian law cases that apply waiver to support its contention that we are being inconsistent with past decisions. These cases may fit the dissent’s carefully crafted narrative, but they do little to support its contention of inconsistency. Although noticeably absent from the cases cited by the dissent, the interests of comity and tribal self-government are critical to our conclusion here.[14]
CONCLUSION
Alvarez failed to exhaust his claims and, thereby, failed to meet this “prerequisite” of our exercise of jurisdiction. Alvarez has not shown that the unavailability or futility of direct appeal excuses the exhaustion requirement. Nor has he shown that the Community’s appeals process did not comply with the ICRA. Although the Community failed to raise Alvarez’s lack of direct appeal in its motion to dismiss, we nevertheless consider the defense under Wood and Cranberry. The strong comity and *1024 judicial efficiency interests at stake warrant federal abstention. We, therefore, decline to assume jurisdiction over Alvarez’s claims.
AFFIRMED.

. The form also stated: "You have a right to a jury trial.”

. Section 2.1236(A) of the Gila River Indian Community Code, at the time, provided:
The Community, or any party to a prosecution by information or complaint may appeal as prescribed in this Code. A defendant shall have the right to appeal his conviction or sentence in a criminal action. A petition for appeal must be filed within five days after the decision, order, decree, or judgment of a court, excluding Saturdays, Sun *1014 days, and holidays observed by the Community Court.
(emphasis added).

. Alvarez was not represented in any of the proceedings before the Community courts. Eventually, the federal district court granted Alvarez’s motion to appoint counsel. However, we note that, in sharp contrast to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the ICRA does not provide a right to appointed counsel free of charge. See 25 U.S.C. § 1302(a)(6); Tom v. Sutton, 533 F.2d 1101, 1103-04 (9th Cir.1976).

. The dissent contends that Alvarez's case is distinguishable from Selam because, in its view, Alvarez had no adequate remedy in tribal courts. The dissent cites two bases for distinguishing Selam from this case: (1) Se-lam was represented by counsel at trial and (2)the trial judge informed Selam of his right to appeal during sentencing. Id. The first point was irrelevant to our analysis in Selam. The second point had nothing to do with whether Selam had an adequate remedy in tribal court. Selam, 134 F.3d at 954 (discussing, separately, Selam's knowledge of his right to appeal and the adequacy of his remedy). We rejected Selam’s argument that "exhaustion would have been futile or that the tribal court of appeals offered no adequate remedy” for one reason: "Selam ... demonstrated neither.” Id. The same is true of Alvarez.

. We acknowledge, as we did in Selam, that Alvarez could not now bring his claims "because tribal appellate procedure only entitled him to appeal within [five] days of his conviction.” 134 F.3d at 954 n. 6. This does not change our conclusion, because:
if we were to assume jurisdiction over an unexhausted claim solely on the basis that it is now too late ("futile”) for [Alvarez] to bring it, this would eviscerate the tribal court exhaustion requirement-at least in cases where parties have a limited period of time in which to file an appeal. Therefore, we decline to consider the appeal of a judgment in the tribal courts futile just because the dissatisfied party has neglected to file a timely appeal. Id.

.Gila River Indian Community Code § 2.1326(H) reads:
After hearing the appeal the appellate court shall issue a ruling on its findings and may:
(1) Affirm the judgment of the lower court; or
(2) Order the case returned to the lower court for a new trial; or
(3) Reduce the sentence imposed by the lower court; or
(4) Rule that the decision of the lower court be reversed and the case dismissed.

. The dissent presents the extreme hypothetical that a tribal court could implement a five-minute (or thirty-second) time-limit to appeal and thereby forestall a prisoner’s right to ha-beas corpus review, because the prisoner would never be able to exhaust tribal remedies. However, in such an extreme case, this court would not be bound by such a ridiculous procedure. Instead, we would be authorized to hold that such a short time-limit is contrary to ICRA § 1302(a)(8) (prohibiting deprivation of liberty without due process of law). The five day time-limit in the present case is hardly comparable to the five-minute limit raised by the dissent. Though the exact line between what is an appropriate time-limit and what is too short is difficult to determine, it is unnecessary for the determination of this case. Here, Alvarez received notice of the time-limit for appeal, and we hold that the time-limit was appropriate under the ICRA.

. We do not, as the dissent contends, hold that "a state or tribe can only waive the defense by saying so explicitly.” We simply require, as the Supreme Court does, evidence that the state or tribe "knowingly and intelligently relinquished” its exhaustion defense, as opposed to having ‘‘inadvertently]” overlooked it. 132 S.Ct. at 1832 n. 4, 1833 (alteration in original).

. The dissent's attempt to analogize the facts of this case to Wood misses the mark. Given the Community’s motion to dismiss for failure to exhaust, it would be illogical to conclude that the Community, like the state in Wood, "strategically withheld the ... defense.” See Wood, 132 S.Ct. at 1834. In an effort to avoid this obvious conclusion, the dissent takes a more nuanced, unsupported-by-case-law approach, arguing that the Community “strategically withheld” one argument that supported the failure-to-exhaust defense.
The dissent speculates—as it does so much throughout its opinion—that the Community withheld the argument that Alvarez failed to appeal, because the Community had "done everything in its power to prevent Alvarez from appealing his conviction." Dissent at 41. The problem, of course, is that this theory finds no support in the record. See Day v. McDonough, 547 U.S. 198, 211, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) ("[Njothing in the record suggests that the State ‘strategically’ withheld the defense or chose to relinquish it.” (emphasis added)). Even if this theory had some basis in the record, what could the Community possibly gain by not arguing that Alvarez failed to appeal?
In Wood, the state intentionally relinquished its defense, because it had made a "deliberate decision to proceed straightway to the merits.” See 132 S.Ct. at 1834. Certainly the Community did not make that same decision. After all, filing a motion to dismiss would be a rather unusual way to "deliberately steer[ ] the District Court away from the question and toward the merits of [the] petition.” Id. at 1835. We find nothing in the record to support the assertion that when the Community moved to dismiss the case for failure to exhaust it intentionally relinquished the argument that Alvarez failed to appeal. This leads us to conclude that the Community's failure to raise the argument was more "inadvertent” than "deliberate."

.Noting the Community’s failure to raise exhaustion on appeal, the dissent suggests that we should rule on the merits because “we’d be doing only what the Community asked us to do in the first place.” The dissent’s rationale puts the cart before the horse. The question of whether we should raise the exhaustion defense “on [our] own motion,” Wood, 132 S.Ct. at 1834, only arises because the government failed to raise the issue on appeal. If we answered the question of whether we should raise exhaustion sua sponte by asking whether the government raised the issue on appeal, the answer would always be no. The dissent’s logic would make the discretion prescribed by Wood illusory. ■

.As the Tenth Circuit explained in Smith, tribal exhaustion is of particular importance among the abstention doctrines as, in addition to forwarding comity interests similar to those forwarded by respect for state courts, requiring exhaustion of tribal remedies advances Congress's interest in the development of tribal sovereignty. 947 F.2d at 445 (explaining that, in recognition of Congress's intent, the Supreme Court "assiduously advocate]» federal abstention in favor of tribal courts").
Other circuits have also read Supreme Court precedent, including Granberry, to imply that the tribal exhaustion requirement is of special importance. See Bowen v. Doyle, 230 F.3d 525, 530 (2d Cir.2000) (describing Granberry ’s dicta as characterizing the tribal exhaustion rule as "an inflexible bar to consideration of the merits ... by the federal court, ... requiring] ... dismiss»] when it appears there has been a failure to exhaust”); Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation, 27 F.3d 1294, 1300 (8th Cir.1994) (approving of Smith’s interpretation of Granberry ).
In Bank One, N.A. v. Shumake, 281 F.3d 507 (5th Cir.2002), the Fifth Circuit found the tribal exhaustion doctrine far more powerful than the state court favoring doctrine of Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). As the Fifth Circuit explained, although Colorado River relieves the federal courts of their “unflagging obligation” to exercise their jurisdiction only in exceptional circumstances, tribal exhaustion "subordinates the federal court's obligation to exercise its jurisdiction to the greater policy of promoting tribal self-government." Bank One, 281 F.3d at 514-15. Therefore, "Colorado River abstention is thus the exception to the rule, whereas tribal exhaustion is the rule rather than the exception,” Id. at 515.

. The dissent argues that we are obligating federal courts to always require full exhaustion in tribal habeas cases. However, this is simply not the case. Although our holding that tribal cases are exceptional provides federal courts the ability to raise the exhaustion requirement sua sponte in tribal cases, it does not require them to do so. Instead, federal courts must examine the facts of each case and apply the balancing test used in Part I of this Opinion to determine if requiring full exhaustion is appropriate.

. Similarly, we have found that requiring tribal exhaustion is “the most appropriate action” even when a case only involves questions of federal law. United States v. Plainbull, 957 F.2d 724, 728 (9th Cir.1992). As we explained in Plainbull, that federal law is at issue is "immaterial" when “considerations of comity require the exhaustion of tribal remedies.” Id.

. The dissent dismisses the comity interests at stake here because, in its view, the “Community’s process seems to be designed to deny convicted defendants a fair chance to appeal." But as we have said in the context of Indian law, comity involves “respecting a sovereign’s procedures and avoiding paternalism." Bird v. Glacier Elec. Coop., Inc., 255 F.3d 1136, 1143 (9th Cir.2001); Selam, 134 F.3d at 953-54 ("[EJxcept to the extent demanded by the [ICRA], the structure and procedure of [tribal] courts may be determined by the tribes themselves,”). The dissent seems to be saying that it is willing to respect a tribe's sovereign right to order its own procedures—but only if the dissent approves of those procedures. This turns comity on its head and replaces it with the very paternalism the Supreme Court has discouraged. See Iowa Mut. Ins. Co., 480 U.S. at 14-19, 107 S.Ct, 971. Indeed, the dissent sprinkles its analysis with derogatory remarks about the tribe’s judicial processes, even implying that tribal judicial officials are less suited for their jobs than “marsupials.” Suffice to say, we think the tribe, a sovereign nation, is more deserving of our respect.